STATE OF CONNECTICUT *v.* STEVE D. NELSON
(AC 29895)

Gruendel, Harper and Schaller, Js.

Argued September 17, 2009—officially released January 19, 2010

David J. Reich, special public defender, for the appellant (defendant).

Sarah Hanna, deputy assistant state's attorney, with whom, on the brief, were Scott J. Murphy, state's attorney, and Brian Preleski, senior assistant state's attorney, for the appellee (state).

*Opinion*

HARPER, J. The defendant, Steve D. Nelson, appeals from the judgment of conviction, rendered after a jury trial, of kidnapping in the first degree in violation of General Statutes § 53a-92 (a) (2) (A), kidnapping in the first degree in violation of § 53a-92 (a) (2) (B), assault in the first degree in violation of General Statutes § 53a-59 (a) (1), burglary in the first degree in violation of General Statutes (Rev. to 2005) § 53a-101 (a) (1) and burglary in the first degree in violation of General Statutes (Rev. to 2005) § 53a-101 (a) (2).[1] The defendant

---

[1] The court imposed a total effective sentence of fifty-five years incarceration. The court ordered that the defendant's sentence run concurrently with an eighteen year sentence handed down in an earlier, related prosecution. This court affirmed that earlier judgment of conviction following a direct appeal. *State* v. *Nelson*, 105 Conn. App. 393, 937 A.2d 1249, cert. denied, 286 Conn. 913, 944 A.2d 983 (2008). In that earlier action, the state charged the defendant with all of the crimes of which he was convicted in the present action as well as two counts of robbery in the first degree, one count of larceny in the first degree and one count of conspiracy to commit robbery in the first degree. The jury found the defendant guilty of conspiracy to

claims that (1) the trial court improperly denied his request for a continuance, (2) the evidence was insufficient to support the jury's finding that he had committed assault in the first degree, (3) the conviction of two counts of kidnapping in the first degree violated the constitutional prohibition against double jeopardy and (4) the court improperly instructed the jury with regard to the kidnapping charges. We agree only with the defendant's double jeopardy claim and will grant him relief related to that claim. We affirm the judgment of the trial court in all other respects.

The jury reasonably could have found the following facts. On January 22, 2005, at approximately 5:30 p.m., the victim, Lincoln Marshall, was entering his Wethersfield apartment when the defendant and another man, both wearing masks and brandishing handguns, forced him inside his apartment. Upon entering the apartment, the assailants pushed the victim to the floor, bound his hands and feet and affixed duct tape to his head, including his face. The assailants repeatedly asked the victim for his money, to which the victim replied that the only money in his possession was in his wallet. The defendant took the money that was in the wallet but both assailants continued to ask the victim for more. The assailants struck the victim, and the defendant told the victim that he was going to torture him.

At that point, the assailants heated a knife and a knife sharpening tool on the victim's stove. The defendant pressed these heated instruments against the victim's face and abdomen,[2] all the while ordering him to reveal where he kept his money. The defendant also threatened to kill the victim. At some point, the defendant

---

commit robbery in the first degree and not guilty of larceny in the first degree. The jury was unable to reach a verdict with regard to the remaining seven charges, on which the court declared a mistrial.

[2] As a result of this conduct, the victim suffered scarring on his forehead and abdomen.

asked his accomplice to monitor the victim while he ransacked the victim's apartment in search of valuables. The defendant, carrying some of the victim's possessions out of the apartment, walked in and out of the victim's apartment several times. Approximately one hour after his assailants bound him and began their assault, the victim told the men that he had a friend, named Brian, who owed him approximately $2800. A telephone call made to Brian was answered by Brian's brother, who stated that Brian was away on vacation. The victim's assailants removed the restraint placed on the victim's ankles and led him, with his head covered, from his apartment to the backseat of his automobile at gunpoint. By this time, the defendant removed the mask that he had worn when he first had entered the victim's apartment. The assailants bound the victim's ankles once he was inside of the automobile. The defendant, who was driving the victim's automobile with the victim bound in the backseat, followed his accomplice, who was driving another automobile, to a house on Lenox Street in Hartford. During the drive to the house, the defendant threatened the victim; he told him that he knew where the victim lived and that he knew that the victim had a young son. At the house, the assailants, with the help of another man who was already there, removed the victim's belongings from the trunk of the victim's automobile.

After approximately twenty minutes, the defendant, the man who accompanied the defendant to the victim's apartment, the man who assisted the defendant at the Lenox Street residence and the victim left the Lenox Street house in the victim's automobile. The defendant drove the automobile, and the victim remained bound in the backseat. The defendant drove to Brian's residence in Windsor after the victim, under the threat of physical violence, provided directions to that location.

Upon arriving at Brian's residence, one of the defendant's accomplices monitored the victim in the automobile while the defendant and another of his accomplices broke into Brian's residence and removed several items that they placed in the trunk of the victim's automobile. Afterward, the defendant drove back to the house on Lenox Street, where the items taken from Brian's residence were removed from the automobile.

While at the house on Lenox Street, the defendant placed a telephone call to another individual; the victim was the subject of the conversation. Thereafter, the defendant drove the victim and the two other men in the victim's automobile to another location in the area of Blue Hills Avenue in Hartford. Upon arriving at a house at that location, a man approached the automobile and began to strike the victim in his face and abdomen while asking the victim for money. He also struck the victim in the head with a handgun. The defendant and the individual he met at that location threatened to kill the victim if he did not reveal to them the location of his money.

Following this encounter, the defendant drove the victim to yet another location in Hartford, near a public high school. The defendant and his associates left the victim, who was partially bound in his automobile, at that location at approximately 10:15 p.m., nearly five hours after the defendant first ambushed the victim at his apartment. The defendant and the victim's other assailants departed the scene in another automobile. Thereafter, the victim called 911 for police and medical assistance. The victim was familiar with the defendant prior to the events of January 22, 2005, and readily identified him to the police as one of his assailants. Additional facts will be set forth as necessary.

I

First, the defendant claims that the court improperly denied his request for a two month continuance. We disagree.

The following facts underlie the defendant's claim. The defendant's first trial on charges related to his conduct on January 22, 2005, occurred in November, 2005. See footnote 1 of this opinion. On October 23, 2006, the trial that is the subject of this appeal was scheduled to commence, at which time the defendant filed a motion for permission to represent himself. In his written motion, the defendant unequivocally asserted his right to self-representation and expressed his belief that his trial counsel in the earlier trial, who also was representing the defendant in the October, 2006 trial, had not represented him to the best of his ability. The defendant stated that, upon reviewing the transcript from the earlier trial, he believed that his attorney, Claud Chong, failed to raise several issues at trial and had not cross-examined the victim adequately. The defendant asserted that this deficient representation had affected the outcome of the earlier trial, after which he was convicted of conspiracy to commit robbery in the first degree.

In accordance with Practice Book § 44-3, the court canvassed the defendant concerning his motion to represent himself. During this canvass, the defendant represented that he had been present during the earlier trial, that he had been studying the law during his incarceration and that he intended on calling only one witness to testify during his case-in-chief. During the canvass, the court questioned the defendant concerning the burdens and dangers of self-representation. The defendant mentioned that he would be seeking a two month continuance to prepare for trial. The court asked the defendant if he would be prepared for trial if such request was denied. The defendant replied in the affirmative. Following the canvass, the court granted the defendant's motion to represent himself and appointed Chong as standby counsel.

Following the court's ruling, the defendant informed the court that he was requesting a two month continuance. Initially, the defendant stated that the continuance was necessary so that he could study for his trial, file motions and obtain subpoenas. Immediately, the court questioned the need for a continuance of such length. The following colloquy then occurred between the court and the defendant:

"The Court: . . . [P]art of me wants to just have the case start right now. It's been around a long time. But you represent yourself now. You have standby counsel. I don't believe that you need two months to get ready on this thing. I know it's consumed a lot of your time while you were incarcerated and, well, it should, and it certainly is your life. But I don't think you need that much time.

"The Defendant: Your Honor, it's not fair to me to represent myself pro se . . . without reading my case. I didn't have control of my case from the start. Today is the first time I ever decided that I want to represent myself.

"The Court: So, what does that mean? What all of a sudden are you going to receive?

"The Defendant: I want a continuance. That way I can study my case. Two months.

"The Court: I know, but what are you studying? Do you have it right there? What do you mean by your case? You've been living your case for a while now.

"The Defendant: Yeah, but I didn't have control of it to present my innocence to the court. Attorney Chong had that decision. I decided I want to do so, but I need more time.

"The Court: All right, but is this in regard to presenting or mounting a defense? . . .

"The Defendant: Yes, Your Honor.

"The Court: All right, well, why do you need that much time to do that? What do you need to do?

"The Defendant: Read a little bit more.

"The Court: Read a little bit more of what?

"The Defendant: The law and the statutes.

"The Court: Presenting a defense now is a matter of you—I mean, it's the burden of the state to prove you guilty beyond a reasonable doubt of each of those statutes they charged you with and each of the elements in there. That's their job. And I assume in defending yourself, you're going to be cross-examining witnesses and hoping to raise reasonable doubt with the jury. You can also put on an affirmative defense, for example, or you could [present], like you said, alibi [evidence demonstrating that] you weren't the person [involved in the crime]. All right? Which is going to require you to call some witnesses and have them testify, or maybe you're going to have exhibits, but I don't think it's going to take that long, is what I'm saying. I'm going to give you some time. I don't think it's going to take that long, that's all. All right?

"The Defendant: I need two months, please.

"The Court: I know what you're saying. I'm not giving you two months, though. All right? I'll give you about a month. All right? I'll call [the case] back in in about a month. That should give you plenty of time."

The court then observed that the defendant had the opportunity to seek advice and assistance from his standby counsel. The defendant expressed frustration with his inability to communicate with Chong. After the court reiterated that it would afford the defendant

a continuance of approximately one month, the defendant again stated that he needed more time. The defendant stated that he needed to file a motion for disclosure but did not explain how a continuance of two months was related to this filing. When the court inquired if there was any other reason why a two month continuance was necessary, the defendant replied: "Just to read my paperwork and my case, to come up with a strategy of how to attack my accuser."

On December 1, 2006, thirty-nine days later, the defendant appeared in court to present several motions to the court concerning his case. Included in these motions were motions to suppress evidence. The defendant did not argue during the proceeding that day that he was not prepared for trial or that he needed additional time to prepare for trial. When the hearing on the motions to suppress evidence continued on December 4, 2006, the defendant likewise did not argue that he was not prepared for trial. To the contrary, when the court asked the defendant at that hearing whether he was "prepared to try this case," the defendant replied, "[y]es, Your Honor."

The defendant appeared in court several times prior to the presentation of evidence in this case. Jury selection took place over the course of three days, during which time the defendant did not make any representations to the court that he needed additional time to prepare for trial. After a jury had been selected, the court informed the parties of the date on which the presentation of evidence would begin. The defendant did not state at that time or at any other time prior to the presentation of evidence that he was not prepared for trial. On the first day of trial, the court asked the defendant if he was "ready to proceed," to which the defendant replied, "[y]es, Your Honor." During the presentation of evidence, which lasted for several days, the defendant did not state that he was unprepared for

trial or that he needed any additional time to prepare for trial.[3]

The defendant claims that, by denying his request for a two month continuance, the court infringed on his right to self-representation and deprived him of his due process right to a fair trial.[4] The defendant argues that

[3] Relying on the affirmative representations of the defendant, that he was ready to try his case following the denial of his request for a two month continuance, the state argues that the defendant waived any objection to the court's ruling. "[A] waiver is ordinarily an intentional relinquishment or abandonment of a known right or privilege. An effective waiver presupposes full knowledge of the right or privilege allegedly [being] waived and some act done designedly or knowingly to relinquish it. . . . Moreover, the waiver must be accomplished with sufficient awareness of the relevant circumstances and likely consequences." (Citations omitted; internal quotation marks omitted.) *State* v. *Santiago*, 245 Conn. 301, 310–11, 715 A.2d 1 (1998).

Although the defendant, at the time of trial and thereafter, represented that he was ready to try his case, we do not necessarily view these statements of the pro se defendant as an indication that he had abandoned his request for a two month continuance. These representations were made at the time of trial, after the court had made it clear that it was not affording the defendant a continuance of two months despite the defendant's protestations to the contrary.

Although we conclude that these representations did not constitute a waiver of any objection to the court's ruling, these representations as well as the defendant's failure either to renew his request for additional time in which to prepare for trial or to provide the court with any additional specific reasons why additional time was necessary to prepare his defense would be highly relevant in an analysis of whether the court's ruling caused the defendant any harm. Because we resolve the defendant's claim by concluding, based solely on the facts made known to the court at the time that it ruled on the defendant's request, that the court's ruling did not reflect an abuse of discretion, we need not consider whether the ruling was harmful.

[4] The defendant, couching the claim solely in due process terms, analyzes the claim in accordance with the criteria enumerated in *Mathews* v. *Eldridge*, 424 U.S. 319, 335, 96 S. Ct. 893, 47 L. Ed. 2d 18 (1976) ("the specific dictates of due process generally [require] consideration of three distinct factors: [f]irst, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the [g]overnment's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail").

Although we carefully consider the arguments made by the defendant with regard to the propriety of the court's denial of his request for a two

the requested continuance was related directly to his ability to prepare his case for trial. The defendant stresses the fact that, at the time the request was made, he did not have a high school diploma or any type of legal training. He asserts that, at the time he made the request for a continuance, he had just decided to represent himself and that "[he had] requested the continuance so that he could educate himself not only on the law involved in his case, but also to formulate a defense and to gather all the paperwork related to his case." The defendant takes issue with the court's assessment of his ability to prepare for trial within one month; he asserts that there was no evidence that he had been involved in preparing his defense at the earlier trial and that, as an incarcerated defendant, he lacked the resources available to a defendant who was not incarcerated in preparing for trial.

Additionally, the defendant asserts: "It might take a skilled defense lawyer several weeks to a month to fully prepare this case for trial. This preparation would include reviewing all the evidence, reviewing the admissibility of evidence, reviewing the law, preparing motions, reviewing reports from expert witnesses, assessing the strength of the state's case and its weaknesses, preparing cross-examination of witnesses, locating witnesses for the defense and interviewing them. The foregoing tasks would be time-consuming to an experienced criminal defense attorney, but, for a pro se defendant, the task is compounded by additional preparation such as learning the rules of evidence and the rules of criminal procedure, learning how to select a jury and learning how to preserve issues for appeal.

month continuance, we do not apply the *Eldridge* analysis, applicable to procedural due process claims, to the present claim. Rather, we follow the analysis that our Supreme Court has applied to claims of this nature. See *State* v. *Coney*, 266 Conn. 787, 801–802, 835 A.2d 977 (2003), which we will discuss.

. . . [T]he request for a two month continuance was necessary for [the defendant] to provide an adequate defense."

Finally, the defendant asserts that the request for a continuance was made prior to the case being scheduled for trial and that he was already incarcerated at that time. Thus, the defendant argues that his request, if granted, was unlikely to have any negative effect on the administration of justice, nor would it impact the victim or society as a whole.

Our Supreme Court has enunciated the standard of review and relevant legal principles applicable to the defendant's claim: "The determination of whether to grant a request for a continuance is within the discretion of the trial court, and will not be disturbed on appeal absent an abuse of discretion. . . . A reviewing court is bound by the principle that [e]very reasonable presumption in favor of the proper exercise of the trial court's discretion will be made. . . . To prove an abuse of discretion, an appellant must show that the trial court's denial of a request for a continuance was arbitrary. . . . There are no mechanical tests for deciding when a denial of a continuance is so arbitrary as to violate due process. The answer must be found in the circumstances present in every case, particularly in the reasons presented to the trial judge at the time the request is denied. . . . In addition, we consistently have acknowledged that [o]ur role as an appellate court is not to substitute our judgment for that of a trial court that has chosen one of many reasonable alternatives. . . .

"We have articulated a number of factors that appropriately may enter into an appellate court's review of a trial court's exercise of its discretion in denying a motion for a continuance. Although resistant to precise

cataloguing, such factors revolve around the circumstances before the trial court at the time it rendered its decision, including: the timeliness of the request for continuance; the likely length of the delay; the age and complexity of the case; the granting of other continuances in the past; the impact of delay on the litigants, witnesses, opposing counsel and the court; the perceived legitimacy of the reasons proffered in support of the request; [and] the defendant's personal responsibility for the timing of the request . . . .

"In the event that the trial court acted unreasonably in denying a continuance, the reviewing court must also engage in harmless error analysis. . . . In connection with this inquiry into harmless error, [w]e distinguish between two types of cases: those in which a constitutional right has been implicated by a denial of a continuance, and those of a nonconstitutional nature. . . . Although prejudice is presumed in instances in which a defendant has suffered a deprivation of a constitutional right, in order to establish reversible error in nonconstitutional claims, the defendant must prove both an abuse of discretion and harm . . . ." (Citations omitted; internal quotation marks omitted.) *State* v. *Coney*, 266 Conn. 787, 801–802, 835 A.2d 977 (2003); *State* v. *Bloom*, 86 Conn. App. 463, 476–77, 861 A.2d 568 (2004), cert. denied, 273 Conn. 911, 870 A.2d 1081 (2005).

Our review of the record reflects that the court did not deny the requested continuance arbitrarily but carefully sought the reasons for the request and concluded that a two month continuance was unnecessary. Here, the request was made on the day that the defendant's trial was scheduled to commence. The requested continuance was lengthy. Although the trial had not yet begun at the time the request was made, the court noted several times that the case was not new but involved events that occurred approximately twenty-one months earlier. Additionally, this was the second trial involving

the events of January 22, 2005; the earlier trial had resulted in a mistrial as to several counts of the state's information. Also, the court observed that, although the defendant was being charged with several crimes, the defendant, having attended the related prior trial and having stated that he reviewed the transcript of that earlier related proceeding, should have been familiar with the facts as alleged by the state, as well as the state's evidence. Although there was no evidence concerning the impact of the delay on the court, it belies common sense to suggest that a delay of two months would not have affected detrimentally the state, the witnesses scheduled to appear for trial, as well as the court itself, which was prepared to begin the trial. Moreover, the cause and timing of the request were entirely the responsibility of the defendant; it was the defendant's choice to exercise his right to self-representation and to seek the continuance at issue at the time of trial.

More importantly, it is obvious from the court's colloquy with the defendant that the court did not perceive a legitimate reason for a continuance of two months. During the court's canvass pursuant to Practice Book § 44-3, the defendant represented that he was prepared for trial even if the court denied his request for a continuance. Later, the court asked the defendant several times to articulate with specificity the reason for the request. The court afforded the defendant an ample opportunity to justify his request and, during its colloquy with him, reminded him of the many tasks incident to his status as a pro se defendant. The defendant explained the basis for his request only in general terms, mentioning his need to prepare for trial and to review materials pertinent to his case. The defendant did not state that any specific investigation was necessary to prepare for his defense but had informed the court that he intended on presenting only one witness during his case-in-chief. The defendant stated merely that he

needed extra time to study the law and the statutes related to his case. Provided with this type of rationale, the court determined that one month was a sufficient amount of time for the defendant to complete the tasks at issue.

We conclude that the court did not act arbitrarily but carefully evaluated the representations of the defendant in seeking the continuance. On appeal, the defendant sets forth the same type of rationale for his request that was asserted before the trial court. The defendant relies on the unsubstantiated theory that he adequately could study the law and prepare for his defense within two months but not a shorter amount of time. As he did at trial, the defendant has failed to identify specific tasks, related to his defense, which are reasonably related to a two month continuance. Faced with the argument that the defendant required time to read materials related to his case, the court reasonably concluded that a one month continuance was sufficient. We are mindful that the court did not deny the defendant's request in its entirety but granted a lengthy continuance to the defendant and did not preclude him from asserting at a later date that additional time was needed to prepare for his defense. When the case proceeded to trial more than one month after the request was denied, the defendant did not, in fact, make any such arguments. In light of the reasons proffered for the continuance, we do not conclude that the court's decision reflected an abuse of its discretion.

## II

Next, the defendant claims that the evidence was insufficient to support the jury's finding that he had committed assault in the first degree in that the state did not prove beyond a reasonable doubt that the victim

had sustained serious physical injury during the incident.[5] We disagree.

"The standard of review employed in a sufficiency of the evidence claim is well settled. [W]e apply a two part test. First, we construe the evidence in the light most favorable to sustaining the verdict. Second, we determine whether upon the facts so construed and the inferences reasonably drawn therefrom the [jury] reasonably could have concluded that the cumulative force of the evidence established guilt beyond a reasonable doubt. . . .

"While the jury must find every element proven beyond a reasonable doubt in order to find the defendant guilty of the charged offense, each of the basic and inferred facts underlying those conclusions need not be proved beyond a reasonable doubt. . . . If it is reasonable and logical for the jury to conclude that a basic fact or an inferred fact is true, the jury is permitted to consider the fact proven and may consider it in combination with other proven facts in determining whether the cumulative effect of all the evidence proves the defendant guilty of all the elements of the crime charged beyond a reasonable doubt." (Internal quotation marks omitted.) *State* v. *Millan*, 290 Conn. 816, 825, 966 A.2d 699 (2009).

Section 53a-59 (a) provides in relevant part: "A person is guilty of assault in the first degree when: (1) With intent to cause serious physical injury to another person, he causes such injury to such person . . . by means of a . . . dangerous instrument . . . ." " 'Serious physical injury' means physical injury which creates

---

[5] The defendant did not preserve this issue for appellate review. Nonetheless, unpreserved sufficiency claims are reviewable on appeal because such claims implicate a defendant's federal constitutional right not to be convicted of a crime on insufficient proof. See *State* v. *Adams*, 225 Conn. 270, 275 n.3, 623 A.2d 42 (1993).

a substantial risk of death, or which causes serious disfigurement, serious impairment of health or serious loss or impairment of the function of any bodily organ . . . ." General Statutes § 53a-3 (4). In light of the facts of this case, the portion of the statute related to serious disfigurement is most relevant to our analysis. "To 'disfigure' is to 'blemish or spoil the appearance or shape of'; American Heritage Dictionary (New College Ed. 1976); and 'disfigurement' is '[t]hat which impairs or injures the beauty, symmetry, or appearance of a person or . . . which renders unsightly, misshapen, or imperfect, or deforms in some manner.' Ballentine's Law Dictionary (3d Ed. 1969)." *State* v. *Barretta*, 82 Conn. App. 684, 689, 846 A.2d 946, cert. denied, 270 Conn. 905, 853 A.2d 522 (2004).

It is not disputed that the evidence permitted a reasonable finding that the defendant pressed a knife and a knife sharpening tool, both of which had been heated on the victim's stove, against the skin on the victim's face and abdomen, thereby causing physical injuries. The defendant argues that, although the state presented evidence of physical injuries, these injuries did not rise to the level of a serious physical injury as is required by the statute. Additionally, the defendant argues that "because the [victim's] injuries were small and appeared from the photographs [in evidence] to be superficial, medical testimony regarding the healing process and the prospect for permanent scarring would be needed to elevate any disfigurement to the status of serious."

Having identified the essential element of the crime at issue, we turn to the evidence presented at trial related to that element. The victim testified that the defendant tortured him upon arriving at his apartment by burning him with the knife and knife sharpening tool. The victim described this experience as painful.

The state presented photographs of the victim's forehead and stomach that were taken upon the victim's arrival at a hospital following the incident. The photographs clearly depicted burn marks and scarring to the affected areas of the victim's face and abdomen. With regard to the marks on the victim's forehead, the photograph depicted injuries that appeared to penetrate several layers of skin. The victim testified that, at the time of trial, he still suffered welts and scars from the burns. At the prosecutor's request at trial, the victim showed the jury the affected areas of his skin that were depicted in the photographs. The court noted for the record that the victim showed the jury "a large patch of discolored skin on the upper right portion of his forehead," "smaller areas of discolored skin" on the right side of his forehead and "discolored skin in his abdomen area." The jury heard this testimony from the victim on December 12, 2006, more than twenty-two months following the date on which the defendant allegedly inflicted these injuries on the victim.

It is not disputed that the state presented evidence of physical injury sustained by the victim. In such circumstances, both this court and our Supreme Court have observed that "[t]he issue of whether [a] victim suffered serious physical injury [is] a question of fact for the jury to resolve." *State* v. *Anderson*, 16 Conn. App. 346, 357, 547 A.2d 1368, cert. denied, 209 Conn. 828, 552 A.2d 433 (1988); see also *State* v. *Almeda*, 211 Conn. 441, 450, 560 A.2d 389 (1989); *State* v. *Miller*, 202 Conn. 463, 489, 522 A.2d 249 (1987). The serious physical injury inquiry necessarily is "fact intensive"; *State* v. *Ovechka*, 292 Conn. 533, 546, 975 A.2d 1 (2009), after remand, 118 Conn. App. 733, 984 A.2d 796 (2010); and "[n]o bright line exists between physical injury and serious physical injury . . . ." *State* v. *Nival*, 42 Conn. App. 307, 309, 678 A.2d 1008 (1996).

The state presented evidence that the victim had scars on his face and abdomen. Scarring of a similar nature has been deemed sufficient to satisfy the state's burden of proving that a victim has sustained a serious physical injury. See *State* v. *Hayward*, 116 Conn. App. 511, 517, 976 A.2d 791 (holding that evidence of scarring on victim's nose sufficient to demonstrate serious physical disfigurement), cert. denied, 293 Conn. 934, 981 A.2d 1077 (2009); *State* v. *Anderson*, supra, 16 Conn. App. 357 (holding that evidence of permanent scarring on victim's chest and abdomen sufficient to demonstrate serious physical disfigurement). The jury, having observed the victim's scars firsthand, reasonably could have concluded that they constituted serious physical disfigurement because the scars negatively affected the appearance of the skin on his face and abdomen.

Finally, we reject the arguments raised by the defendant with regard to the permanency of the victim's disfigurement. As a preliminary matter, we note that the state did not bear the burden of proving that the injuries at issue were of a permanent nature. See *State* v. *Denson*, 67 Conn. App. 803, 810–12, 789 A.2d 1075 (holding that § 53a-59 [a] [1] does not include permanency requirement), cert. denied, 260 Conn. 915, 797 A.2d 514 (2002). To the extent that the jury did consider whether the injuries were of a permanent nature, we conclude that it would have been reasonable for the jury to have inferred that the injuries were permanent in nature and to have considered such a subordinate finding in determining that the injuries constituted serious physical injury. The state presented evidence that the victim's scars were visible more than twenty-two months following the assault. We reject the defendant's contention that any type of medical evidence was necessary for the jury to evaluate the permanency of the victim's disfigurement. In *State* v. *Anderson*, 74 Conn. App. 633, 643, 813 A.2d 1039, cert. denied, 263 Conn.

901, 819 A.2d 837 (2003), this court rejected a similar argument, stating, "[t]he trial occurred more than eighteen months after the incident, and the jury was able to observe the scars on the victim's face. A trier of facts can conclude, by inference, that an injury will be permanent even though there is no medical testimony expressly substantiating permanency." (Internal quotation marks omitted.) In light of the fact that the jury observed the victim's scars more than twenty-two months following the incident, that rationale applies with even greater weight to the facts of the present case.

III

Next, the defendant claims that the conviction of two counts of kidnapping in the first degree violated the prohibition against double jeopardy afforded by the federal constitution. We agree that the conviction of two counts of kidnapping violated the prohibition against double jeopardy.

The defendant argues, and the state agrees, that under the facts of this case, the conviction of two counts of kidnapping in the first degree, one under § 53a-92 (a) (2) (A) and one under (a) (2) (B), constitute the same offense for double jeopardy purposes. The defendant did not preserve this claim at trial and, in his principal brief, affirmatively requests review and analyzes this claim pursuant to *State* v. *Golding*, 213 Conn. 233, 239–40, 567 A.2d 823 (1989).[6] The claim is reviewable under

[6] A defendant can prevail on an unpreserved constitutional claim under *Golding* "only if *all* of the following conditions are met: (1) the record is adequate to review the alleged claim of error; (2) the claim is of constitutional magnitude alleging the violation of a fundamental right; (3) the alleged constitutional violation clearly exists and clearly deprived the defendant of a fair trial; and (4) if subject to harmless error analysis, the state has failed to demonstrate harmlessness of the alleged constitutional violation beyond a reasonable doubt." (Emphasis in original.) *State* v. *Golding*, supra, 213 Conn. 239–40. "The first two [prongs of *Golding*] involve a determination of whether the claim is reviewable; the second two . . . involve a determination of whether the defendant may prevail." (Internal quotation marks omitted.) *State* v. *Peeler*, 271 Conn. 338, 360, 857 A.2d 808 (2004), cert. denied, 546 U.S. 845, 126 S. Ct. 94, 163 L. Ed. 2d 110 (2005).

*Golding* because the record is adequate for review and the claim is of constitutional magnitude. See *State* v. *Chicano*, 216 Conn. 699, 705, 584 A.2d 425 (1990) ("if double jeopardy claims arising in the context of a single trial are raised for the first time on appeal, these claims are reviewable"), cert. denied, 501 U.S. 1254, 111 S. Ct. 2898, 115 L. Ed. 2d 1062 (1991); *State* v. *Chimenti*, 115 Conn. App. 207, 230, 972 A.2d 293 (noting double jeopardy claims arising in context of single trial are amenable to review pursuant to *Golding*), cert. denied, 293 Conn. 909, 978 A.2d 1111 (2009).

Considering the merits of the claim, we conclude that the defendant prevails under *Golding* because the claimed constitutional violation clearly exists and clearly deprived him of a fair trial. "The double jeopardy clause of the fifth amendment to the United States constitution provides: [N]or shall any person be subject for the same offense to be twice put in jeopardy of life or limb . . . . The double jeopardy clause is applicable to the states through the due process clause of the fourteenth amendment. . . .

"We have recognized that the [d]ouble [j]eopardy [c]lause consists of several protections: It protects against a second prosecution for the same offense after acquittal. It protects against a second prosecution for the same offense after conviction. And it protects against multiple punishments for the same offense. . . . These protections stem from the underlying premise that a defendant should not be twice tried or punished for the same offense." (Citations omitted; internal quotation marks omitted.) *State* v. *Miranda*, 260 Conn. 93, 118–19, 794 A.2d 506, cert. denied, 537 U.S. 902, 123 S. Ct. 224, 154 L. Ed. 2d 175 (2002). The issue before us concerns the last of these protections, multiple punishments for the same offense in the context of a single trial.

"Double jeopardy analysis in the context of a single trial is a two-step process. First, the charges must arise out of the same act or transaction. Second, it must be determined whether the charged crimes are the same offense. Multiple punishments are forbidden only if both conditions are met. . . . The traditional test for determining whether two offenses are the same offense for double jeopardy purposes was set forth in *Blockburger* v. *United States*, 284 U.S. 299, 52 S. Ct. 180, 76 L. Ed. 306 (1932). [W]here the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one, is whether each provision requires proof of a fact which the other does not. . . . In conducting this inquiry, we look only to the relevant statutes, the information, and the bill of particulars, not to the evidence presented at trial." (Citations omitted; internal quotation marks omitted.) *State* v. *Denson*, supra, 67 Conn. App. 808–809; see also *State* v. *Mullins*, 288 Conn. 345, 378, 952 A.2d 784 (2008).

In the present case, it is clear that both kidnapping charges arose from the same act or transaction. The amended substitute information charging the defendant with both crimes alleges that they were committed on the same date, in the same location and against the same person, the victim. We also conclude that, in light of the charging document in the present case, the charged crimes constitute the same offense. Count one of the information, charging the defendant with kidnapping in the first degree in violation of § 53a-92 (a) (2) (A) alleges in relevant part that the defendant restrained the victim "with the intent to inflict physical injury upon him . . . ." Count two of the information, charging the defendant with kidnapping in the first degree in violation of § 53a-92 (a) (2) (B) alleges in relevant part that the defendant restrained the victim "with the intent to accomplish or advance the commission of a felony

. . . ." During the trial, the state clarified that the felony relied on in count two was assault in the first degree in violation of § 53a-59 (a) (1), and the court so instructed the jury.

To convict the defendant of violating § 53a-92 (a) (2) (A) in the manner alleged by the state, the state bore the burden of proving that he (1) abducted the victim, (2) restrained the victim and (3) intended to inflict physical injury on the victim. To convict the defendant of violating § 53a-92 (a) (2) (B) in the manner alleged by the state, the state bore the burden of proving that he (1) abducted the victim, (2) restrained the victim and (3) intended to accomplish or advance the commission of a felony, assault in the first degree. Each crime does not contain a unique element. The kidnapping charge under § 53a-92 (a) (2) (A) requires proof that the defendant intended to inflict physical injury on the victim, an element necessary to prove the kidnapping charge under § 53a-92 (a) (2) (B) where, as here, the state sought to prove that the defendant intended to accomplish or advance the commission of the crime of assault in the first degree. See General Statutes § 53a-59 (a) (1) (requiring proof that defendant intended to cause serious physical injury to another person and caused such injury by means of deadly weapon or dangerous instrument).

Under the circumstances here, we conclude that the kidnapping charge under § 53a-92 (a) (2) (A) is a lesser offense included within the kidnapping charge under § 53a-92 (a) (2) (B) because there is no element in the former crime that is not also in the latter crime. "The test for determining whether one violation is a lesser included offense in another violation is whether it is possible to commit the greater offense, in the manner described in the information or bill of particulars, without having first committed the lesser. If it is possible, then the lesser violation is not an included crime."

(Internal quotation marks omitted.) *State* v. *Miranda*, supra, 260 Conn. 125. As the state acknowledges, it is not possible to commit kidnapping under § 53a-92 (a) (2) (B) as alleged without having first committed kidnapping under § 53a-92 (a) (2) (A). "[I]f two offenses stand in the relationship of greater and lesser included offense . . . then [t]he greater offense is . . . by definition the same for purposes of double jeopardy as any lesser offense included in it." (Internal quotation marks omitted.) *State* v. *Peloso*, 109 Conn. App. 477, 510, 952 A.2d 825 (2008). Accordingly, we conclude that a constitutional violation clearly exists that clearly deprived the defendant of a fair trial.

Further, we agree with the defendant that the error is not harmless, and the state does not argue to the contrary. The defendant's claim satisfies *Golding*'s fourth prong because he was convicted of both kidnapping charges and ultimately was penalized for both offenses. For the conviction under count one, § 53a-92 (a) (2) (A), the court imposed a term of incarceration of twenty years. For the conviction under count two, § 53a-92 (a) (2) (B), the court imposed a term of incarceration of twenty years, to be served concurrently with the sentence imposed in count one. Despite the fact that the court sentenced the defendant to serve a concurrent sentence for the lesser and greater offenses, we recognize that the conviction of both of the separate offenses, in their own right, impermissibly harm the defendant. See *Ball* v. *United States*, 470 U.S. 856, 864–65, 105 S. Ct. 1668, 84 L. Ed. 2d 740 (1985) (discussing potential adverse collateral consequences of second conviction, apart from sentence imposed).

Finally, we must consider the proper remedy due the defendant. We have concluded that the conviction under count one, alleging a violation of § 53a-92 (a) (2) (A), is a lesser offense included within the conviction under count two, alleging a violation of § 53a-92 (a) (2)

(B), because there is no element in the former crime that is not also in the latter crime. "The remedy when a defendant has been sentenced for both a greater and lesser included offense is to merge the conviction for the lesser included offense with the conviction for the greater offense and to vacate the sentence for the lesser included offense." *State* v. *Mullins*, supra, 288 Conn. 379; *State* v. *Chicano*, supra, 216 Conn. 721–25. Accordingly, on remand the court is ordered to merge the conviction on the two kidnapping counts and to vacate the sentence for the conviction under § 53a-92 (a) (2) (A).

## IV

Finally, the defendant claims that the court improperly instructed the jury with regard to the kidnapping charges. In light of our resolution of the claim addressed in part III of this opinion, we need consider this claim only as it relates to the defendant's conviction of kidnapping in the first degree in violation of § 53a-92 (a) (2) (B). We conclude that instructional error exists but that it constitutes harmless error under the circumstances of this case.

As set forth previously, the defendant was convicted of kidnapping with the intent to accomplish or advance the commission of assault in the first degree in violation of § 53a-92 (a) (2) (B) and kidnapping with the intent to inflict physical injury on the victim in violation of § 53a-92 (a) (2) (A). Both of these kidnapping crimes inherently were related to assaultive conduct by the defendant. The defendant acknowledges that he did not challenge the court's instruction at trial and, for the first time on appeal, contends that the court did not properly instruct the jury regarding the essential elements of kidnapping in the first degree, specifically, whether he had acted with the requisite intent for the commission of the crime.

The court delivered its charge to the jury on December 19, 2006. The defendant was convicted and sentenced, after which time his attorney filed the present appeal. The defendant filed his appellate brief in April, 2008. In September, 2008, the defendant moved for leave to file a supplemental brief in which to raise the present claim of instructional error. The defendant's claim is based on our Supreme Court's decision in *State* v. *Salamon*, 287 Conn. 509, 949 A.2d 1092 (2008), which was officially released on July 1, 2008. The defendant claims that the trial court did not properly instruct the jury with regard to the element of intent for the crime of kidnapping by failing to instruct the jury to consider whether his movement of or confinement of the victim was necessary for his commission of an assault against the victim, in which case he lacked the intent to commit the crime. The defendant acknowledged in his motion that he had not raised the claim, either in his brief or at trial, because it was based on a change in the law announced by *Salamon*. In the absence of an objection by the state, this court granted the defendant's motion as well as the defendant's request for a stay, thereby staying further consideration of the appeal until February, 2009. The state filed its brief, fully responding to the claim set forth in the defendant's supplemental brief, in March, 2009.

In raising the present claim, the defendant affirmatively relies on the doctrine set forth in *State* v. *Golding*, supra, 213 Conn. 239–40,[7] and has provided this court with an analysis of his claim consistent with that doctrine. We conclude that the claim is reviewable because the record is adequate to review the claim of instructional error and the claim is of constitutional magnitude. See *State* v. *DeJesus*, 260 Conn. 466, 472–73, 797 A.2d 1101 (2002) ("[a]n improper instruction on an element

---

[7] See footnote 6 of this opinion.

of an offense . . . is of constitutional dimension" [internal quotation marks omitted]).

"The standard of review for claims of instructional impropriety is well established. [I]ndividual jury instructions should not be judged in artificial isolation, but must be viewed in the context of the overall charge. . . . The pertinent test is whether the charge, read in its entirety, fairly presents the case to the jury in such a way that injustice is not done to either party under the established rules of law. . . . Thus, [t]he whole charge must be considered from the standpoint of its effect on the [jurors] in guiding them to the proper verdict . . . and not critically dissected in a microscopic search for possible error. . . . Accordingly, [i]n reviewing a constitutional challenge to the trial court's instruction, we must consider the jury charge as a whole to determine whether it is reasonably possible that the instruction misled the jury. . . . In other words, we must consider whether the instructions [in totality] are sufficiently correct in law, adapted to the issues and ample for the guidance of the jury." (Internal quotation marks omitted.) *State* v. *Wallace*, 290 Conn. 261, 272–73, 962 A.2d 781 (2009).

In *Salamon*, our Supreme Court reconsidered its interpretation of Connecticut's kidnapping statutes. *State* v. *Salamon*, supra, 287 Conn. 522–58. Ultimately, the court concluded that "[o]ur legislature . . . intended to exclude from the scope of the more serious crime of kidnapping and its accompanying severe penalties those confinements or movements of a victim that are merely incidental to and necessary for the commission of another crime against that victim. Stated otherwise, to commit a kidnapping in conjunction with another crime, a defendant must intend to prevent the victim's liberation for a longer period of time or to a greater degree than that which is necessary to commit the other crime." Id., 542. The court stated that "[o]ur

holding is relatively narrow and directly affects only those cases in which the state cannot establish that the restraint involved had independent significance as the predicate conduct for a kidnapping." Id., 548.

Additionally, the court stated: "[A] defendant may be convicted of both kidnapping and another substantive crime if, at any time prior to, during or after the commission of that other crime, the victim is moved or confined in a way that has independent criminal significance, that is, the victim was restrained to an extent exceeding that which was necessary to accomplish or complete the other crime. Whether the movement or confinement of the victim is merely incidental to and necessary for another crime will depend on the particular facts and circumstances of each case. Consequently, when the evidence reasonably supports a finding that the restraint was not merely incidental to the commission of some other, separate crime, the ultimate factual determination must be made by the jury. For purposes of making that determination, the jury should be instructed to consider the various relevant factors, including the nature and duration of the victim's movement or confinement by the defendant, whether that movement or confinement occurred during the commission of the separate offense, whether the restraint was inherent in the nature of the separate offense, whether the restraint prevented the victim from summoning assistance, whether the restraint reduced the defendant's risk of detection and whether the restraint created a significant danger or increased the victim's risk of harm independent of that posed by the separate offense." Id., 547–48.

It is not disputed, and the record reflects, that the court did not deliver an instruction to the jury consistent with the principles enunciated in *Salamon*. Contrary to the arguments advanced by the state, our Supreme

Court has not limited *Salamon*'s application to situations in which the restraint on which the state relies in pursuing a kidnapping conviction is inherent in the defendant's commission of a separate crime. *State* v. *Hampton*, 293 Conn. 435, 455–56, 978 A.2d 1089 (2009). The court in *Salamon* already has explained the rationale and need for an instruction, stating, in essence, that a jury cannot find that a defendant acted with the requisite intent for kidnapping unless it finds that his movement or confinement of the victim was not merely incidental to his commission of another crime. Accordingly, we conclude that the defendant has demonstrated that a constitutional violation clearly exists because the court improperly failed to instruct the jury in a manner consistent with *Salamon*.

The state argues in the alternative that if instructional error exists, it is harmless under the facts of this case. The state asserts that there was overwhelming evidence that the victim's movement or confinement at the hands of the defendant was unrelated to the commission of a crime other than kidnapping. The state relies on the evidence presented at trial that, for several hours after the defendant completed his assault of the victim at the victim's apartment, the defendant and other individuals restrained the victim, driving him to several locations before leaving him alone in his automobile. The state asserts that, even if the court properly had instructed the jury in accordance with *Salamon*, there is no reasonable likelihood that the jury would have concluded that this lengthy period of restraint, lasting for several hours, was incidental to the defendant's commission of any crime other than kidnapping.

"It is well settled that an instructional impropriety that is constitutional in nature is harmful beyond a reasonable doubt, and, thus a reversible impropriety, when it is shown that it is reasonably possible . . . that the jury [was] misled. . . . In other words, the test

for determining whether a constitutional [impropriety] is harmless . . . is whether it appears beyond a reasonable doubt that the [impropriety] complained of did not contribute to the verdict obtained." (Citations omitted; internal quotation marks omitted.) Id., 462–63.

In his analysis of the instructional error, the defendant argues that the court did not adequately instruct the jury to consider whether his movement of or confinement of the victim was incidental to and necessary for his commission of an assault against the victim. In the present case, the jury found that the defendant was the perpetrator of several crimes against the victim. The state presented overwhelming evidence that the defendant repeatedly had assaulted the victim in his apartment and, afterward, restrained him for several hours while transporting him to several locations in the city of Hartford and surrounding towns. The substantial length of the victim's restraint following the assaultive conduct by the defendant is significant to our analysis. The defendant's restraint during such a substantial amount of time is overwhelming evidence of the defendant's intent to prevent the victim's liberation for a longer period of time than that necessary for the commission of any other crime. Stated otherwise, after reviewing all of the evidence presented, we do not believe that a rational jury could find that the defendant's restraint of the victim was inherent in, or incidental to, assault or any other crime.[8] Accordingly, we

---

[8] As stated previously, in briefing this claim, the defendant has focused on the issue of whether his restraint of the victim was incidental to his commission of the crime of assault. Certainly, the crime of assault is relevant to our analysis because the facts reasonably support an assault conviction in the present case. We recognize, nonetheless, that the defendant was charged with and convicted of committing several crimes on January 22, 2005, and our analysis must include all of those crimes as well as any other crimes for which a conviction would be reasonably supported by the facts of this case, regardless of whether the state brought charges against the defendant for those crimes. See State v. Salamon, supra, 287 Conn. 550 n.35.

conclude that it is not at all likely that a jury, properly instructed in accordance with *Salamon*, would have reached a different verdict in this case. We are guided in our analysis by our Supreme Court's reasoning and holding in *Hampton*, which we deem to be factually similar to the present case.[9]

For the foregoing reasons, we conclude that the state has established that the alleged constitutional violation was harmless beyond a reasonable doubt. The claim fails under *Golding*'s fourth prong.

The judgment is reversed only as to the sentences on the two kidnapping offenses and the case is remanded with direction to merge the conviction on those offenses and to vacate the sentence imposed under § 53a-92 (a) (2) (A). The judgment is affirmed in all other respects.

In this opinion the other judges concurred.

___

[9] In *Hampton*, the state presented overwhelming evidence that the defendant and another man had kidnapped the victim and had driven around Hartford and East Hartford with the victim for more than three hours before the defendant had committed any other crime. *State v. Hampton*, supra, 293 Conn. 463. The state presented evidence that, after such passage of time, the defendant had committed the crimes of sexual assault and attempt to commit murder, both against the victim. Id., 464. The defendant was charged with and convicted of kidnapping in the first degree and conspiracy to commit kidnapping in the first degree. Id., 438. He challenged the conviction on the ground of instructional error, specifically, the court's failure to instruct the jury in accordance with *Salamon*. Id., 455. After considering the duration of the victim's restraint by the defendant, as well as its relationship to other criminal activity by the defendant, our Supreme Court concluded that the trial court's failure to instruct the jury in accordance with *Salamon* constituted harmless error. Id., 464. The court reasoned: "The passage of this substantial period of time . . . clearly shows the defendant's intent to prevent the victim's liberation for a longer period of time or to a greater degree than that necessary to commit the subsequent crimes. His restraint of the victim was *not* incidental to any additional offenses." (Emphasis in original.) Id.