## STATE OF CONNECTICUT *v.* VERNON ABREU
## (AC 33405)

Lavine, Robinson and Pellegrino, Js.

Argued November 27, 2012—officially released February 19, 2013

*Christopher Y. Duby*, appointed counsel, for the appellant (defendant).

*Theresa Anne Ferryman*, senior assistant state's attorney, with whom, on the brief, was *Michael L. Regan*, state's attorney, for the appellee (state).

*Opinion*

LAVINE, J. The defendant, Vernon Abreu, appeals from the judgment of conviction, rendered after a jury trial, of one count of risk of injury to or impairing the morals of a child in violation of General Statutes § 53-21 (a) (2) and one count of delivering alcohol to a minor in violation of General Statutes § 30-86 (b) (2). On appeal, the defendant claims that there was insufficient evidence to support his conviction of risk of injury to a child as the jury found him not guilty of two counts of sexual assault in the second degree in violation of General Statutes § 53a-71 (a) (1). We affirm the judgment of the trial court.

The jury reasonably could have found the following facts beyond a reasonable doubt on the basis of the victim's testimony.[1] On September 1, 2008, Labor Day, the defendant went to the home of his former sister-in-law and her husband in Mystic. He informed them that he was on the way to the beach and invited the couple's older daughter, the victim, to join him. The victim, who was thirteen years old at the time, asked if one of her girlfriends could join them. The defendant agreed and drove the two girls to his apartment in

---

[1] In accordance with our policy of protecting the privacy interests of the victims of sexual assault and the crime of risk of injury to a child, we decline to identify the victim or others through whom the victim's identity may be ascertained. See General Statutes § 54-86e.

Pawcatuck, where they changed into their bathing suits. The defendant then drove the girls to Misquamicut Beach in Rhode Island, where the girls spent the afternoon swimming, while the defendant sat on a chair on the beach. At approximately 4 p.m., the defendant and the girls left the beach. During the drive back to Connecticut, the defendant stopped at a package store in Westerly, Rhode Island, and purchased a six-pack of beer. The defendant took the victim's friend home and then invited the victim to come to his apartment. The victim used her cellular telephone to ask her mother if it was all right to go to the defendant's apartment. The victim's mother gave her permission to do so.

When the victim and the defendant arrived at his apartment, they sat on the couch and the defendant offered the victim a beer. The victim took several sips of beer. The defendant pointed out that the victim was sunburned and offered to put lotion on the sunburn; the victim agreed. After the defendant retrieved some Neutrogena lotion from his bathroom, he applied it to the victim's back while she was lying on her stomach. The defendant untied the top of the victim's two-piece bathing suit and asked the victim to turn onto her back. The defendant then applied lotion to the victim's stomach and legs. While he rubbed the victim's stomach, he slipped his hand into the bottom of the victim's bathing suit and continued to rub lotion on her. The victim turned back onto her stomach, and the defendant attempted to remove the bottom of her bathing suit. The victim resisted the defendant's attempt to remove the bottom of her bathing suit, but the defendant was able to remove it and throw it aside. According to the victim, the defendant licked her, including her vagina and put his finger into her vagina. The victim only was able to feel what the defendant was doing as she was lying face down on the couch. The defendant told the victim that he loved her and that she was beautiful. The

defendant continued touching the victim for approximately fifteen minutes until the victim reminded him to get the pizza he had ordered.

While the defendant was applying lotion to the victim, she asked the defendant to hand her her cellular telephone, which was on the coffee table. The defendant gave her the cellular phone and the victim sent a text message to her best friend. The victim continued to send and to receive text messages for approximately one-half hour. The victim also exchanged a text message with her mother regarding the time the victim was to return home, but she did not mention the lotion incident.

After the defendant and victim ate pizza, the defendant took the victim home. When the victim got home, she ran to her room. Her mother came into the victim's bedroom and asked why the victim was upset. Without providing details, the victim told her mother that the defendant had touched her. The victim's father telephoned the police, who responded to her home that evening. That evening, before speaking with the police, the victim told several of her friends about the lotion incident. The following day, September 2, 2008, the victim gave a statement to Timothy Marley, a Stonington police department youth officer. As part of the police investigation, the victim was examined at the emergency department of Lawrence and Memorial Hospital in New London.

Subsequent to the police investigation, the defendant was arrested and charged in a substitute information. In count one, the defendant was alleged to have engaged in sexual intercourse with a person thirteen years of age or older, but under sixteen years of age, by engaging in digital-vaginal intercourse with a minor female and that he was more than three years older than she in violation of § 53a-71 (a) (1). In count two, the defendant

was alleged to have engaged in sexual intercourse with a person thirteen years of age or older, but under sixteen years of age, by engaging in cunnilingus with a minor female and that he was more than three years older than she in violation of § 53a-71 (a) (1). In count three, the defendant was alleged to have committed the crime of risk of injury to or impairing the morals of a child in that he had contact with the intimate parts of a child under the age of sixteen years in a sexual and indecent manner likely to impair the health and morals of such child in violation of § 53-21 (a) (2).[2] The defendant was tried to a jury in late September and early October, 2010.[3] The defendant was sentenced to fifteen years in prison, execution suspended after seven years, followed by ten years of probation. The defendant appealed.

On appeal, the defendant claims that because he was found not guilty of the two counts of sexual assault in the second degree, there was insufficient evidence to support his conviction of risk of injury to a child. More specifically, the defendant claims that, by operation of law, "there must be insufficient evidence to find that the defendant risked injury to a minor by sexually touching her when the same jury found that he did not do so." The state argues that the defendant's claim is not one of insufficient evidence, but one of inconsistent verdicts, which is not a reviewable claim. See *State* v. *Arroyo*, 292 Conn. 558, 585–86, 973 A.2d 1254 (2009), cert. denied, 559 U.S. 911, 130 S. Ct. 1296, 175 L. Ed. 2d 1086 (2010). We disagree with the state's position that the defendant's claim is one of inconsistent verdicts.[4] The

---

[2] The defendant also was charged with and convicted of giving alcohol to a person under the age of twenty-one in violation of § 30-86 (b) (2). That conviction is not at issue in this appeal.

[3] After the state presented its case-in-chief, the defendant offered an oral motion for a judgment of acquittal, which was denied by the court.

[4] In *State* v. *Morales*, 78 Conn. App. 25, 30–32, 826 A.2d 217, cert. denied, 266 Conn. 901, 832 A.2d 67 (2003), the court held that verdicts finding the defendant in that case not guilty of sexual assault in the first degree but guilty of risk of injury to a child were not legally inconsistent. The necessary elements of the crimes were distinct in that sexual assault in the first degree

crime of sexual assault in the second degree,[5] as alleged in counts one and two of the substitute information, and the crime of risk of injury to a child,[6] as alleged in count three, contain elements that the other does not. Moreover, the defendant appears to have conflated the elements of sexual intercourse[7] and contact with the intimate parts[8] of the separate crimes with which the defendant was charged. We therefore review the defendant's claim as one of insufficient evidence.

"The standard of review employed in a sufficiency of the evidence claim is well settled. [W]e apply a two part test. First, we construe the evidence in the light most favorable to sustaining the verdict. Second, we determine whether upon the facts so construed and the inferences reasonably drawn therefrom the [jury] reasonably could have concluded that the cumulative

---

requires a finding that a defendant engaged in sexual intercourse with the victim and risk of injury to a child requires a finding that a defendant had contact with the intimate parts of the victim. Id., 35.

[5] General Statutes § 53a-71 (a) provides in relevant part: "A person is guilty of sexual assault in the second degree when such person engages in sexual intercourse with another person and: (1) Such other person is thirteen years of age or older but under sixteen years of age and the actor is more than three years older than such other person . . . ."

[6] General Statutes § 53-21 (a) provides in relevant part: "Any person who . . . (2) has contact with the intimate parts, as defined in section 53a-65, of a child under the age of sixteen years or subjects a child under sixteen years of age to contact with the intimate parts of such person, in a sexual and indecent manner likely to impair the health or morals of such child . . . shall be guilty of . . . a class B felony for a violation of subdivision (2) of this subsection . . . ."

[7] General Statutes § 53a-65 (2) provides in relevant part: " 'Sexual intercourse' means vaginal intercourse, anal intercourse, fellatio or cunnilingus between person regardless of sex. Its meaning is limited to persons not married to each other. Penetration, however slight, is sufficient to complete vaginal intercourse . . . or fellatio and does not require emission of semen. Penetration may be committed by an object manipulated by the actor into the genital or anal opening of the victim's body."

[8] General Statutes § 53a-65 (8) provides: " 'Intimate parts' means the genital area or any substance emitted therefrom, groin, anus or any substance emitted therefrom, inner thighs, buttocks or breasts."

force of the evidence established guilt beyond a reasonable doubt. . . .

"While the jury must find every element proven beyond a reasonable doubt in order to find the defendant guilty of the charged offense, each of the basic and inferred facts underlying those conclusions need not be proved beyond a reasonable doubt. . . . If it is reasonable and logical for the jury to conclude that a basic fact or an inferred fact is true, the jury is permitted to consider the fact proven and may consider it in combination with other proven facts in determining whether the cumulative effect of all the evidence proves the defendant guilty of all the elements of the crime charged beyond a reasonable doubt." (Internal quotation marks omitted.) *State* v. *Nelson*, 118 Conn. App. 831, 847, 986 A.2d 311, cert. denied, 295 Conn. 911, 989 A.2d 1074 (2010).

The record discloses that the court charged the jury as to count one in relevant part as follows: "The first essential element [of sexual assault in the second degree] is engaging in sexual intercourse with another person. Insofar as it is relevant to the first count, the term 'sexual intercourse' means vaginal sexual intercourse between persons not married to each other. Penetration, however slight, is sufficient to complete vaginal sexual intercourse and does not require emission of semen. Penetration may be committed by an object manipulated by the actor into the genital opening of the alleged victim's body. Here, the state alleges vaginal intercourse by way of digital penetration. Object would include a finger or fingers. Penetration may be committed digitally, that is by the finger or fingers into the genital opening of the alleged victim.

"The term 'genitals' refers to the external reproductive organs which include on a female labia majora. The term opening means something that is unfolded or

spread out. And labia majora are folds. Thus, the opening between the folds, i.e., the labia majora, is the genital opening, and the labia majora form the boundaries of the genital opening. Here, digital penetration, however slight, of the labia majora is sufficient penetration to constitute vaginal sexual intercourse."

As to count two, the court charged in relevant part: "Insofar as it is relevant to this second count, the term 'sexual intercourse' means cunnilingus. 'Cunnilingus' is defined as the stimulation of the vulva or clitoris with the lips or tongue of the actor and penetration is not required where cunnilingus is alleged. Again, vulva is the external genital organs of the female. Clitoris is the small elongated erectile organ at the front part of the vulva."

As to count three, the court charged in relevant part: "To find the defendant guilty of [violating § 53-21 (a) (2)], the state must prove each of the following essential elements beyond a reasonable doubt . . . . Two, the defendant had contact with an intimate part of [the victim]. Three, the contact with the intimate part took place in a sexual and indecent manner. And four, the contact, which was sexual and indecent, was likely to impair the health or morals of [the victim]. . . .

"Here intimate part means [the victim's] genital area. Genitals refer to the external reproductive organs, which include on the female the labia majora. The labia majora are defined as the two prominent mounds of tissue forming the lateral boundaries of the vulva. The vulva is the external female genitalia. . . . Contact means of the intimate part as claimed and would include touching over or under her clothing. . . . [T]he state must prove that the contact with the intimate part took place in a sexual and indecent manner, which was likely to impair the health or moral of the child. The contact with the intimate part must have taken place in a sexual

or indecent manner as opposed to an innocent touching or an accidental, inadvertent or reflexive touching. Sexual means having to do with sex, and indecent means offensive to good taste or public morals."

The jury found the defendant not guilty of sexual assault in the second degree and guilty of risk of injury to a child. Our review of the evidence demonstrates that the victim's testimony provided sufficient evidence by which the jury reasonably could have found beyond a reasonable doubt that the defendant touched the victim's intimate parts in a sexual and indecent manner but that he did not engage in sexual intercourse with the victim as alleged in the sexual assault charges. Cf. *State* v. *Morales*, 78 Conn. App. 25, 35, 826 A.2d 217, cert. denied, 266 Conn. 901, 832 A.2d 67 (2003). We may not second guess a jury's credibility determinations. See *State* v. *Russell*, 101 Conn. App. 298, 316, 922 A.2d 191, cert. denied, 284 Conn. 910, 931 A.2d 934 (2007).

The judgment is affirmed.

In this opinion the other judges concurred.