******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion. In no event will any such motions be accepted before the "officially released" date.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the electronic version of an opinion and the print version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest print version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears on the Commission on Official Legal Publications Electronic Bulletin Board Service and in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

HOWARD WILCOX *v.* COMMISSIONER
OF CORRECTION
(AC 37276)

Sheldon, Keller and Harper, Js.

*Argued September 16, 2015—officially released February 2, 2016*

(Appeal from Superior Court, judicial district of
Tolland, Oliver, J.)

*Sarah Hanna*, assistant state's attorney, with whom,
on the brief, were *Peter A. McShane*, state's attorney,
and *Jo Anne Sulik*, supervisory assistant state's attorney, for the appellant (respondent).

*Jennifer B. Smith*, assigned counsel, for the appellee (petitioner).

*Opinion*

KELLER, J. The respondent, the Commissioner of Correction, appeals from the judgment of the habeas court granting the amended petition for a writ of habeas corpus filed by the petitioner, Howard Wilcox. On appeal, the respondent claims that the habeas court improperly determined that the petitioner (1) established good cause for failing to raise an instructional error claim at trial or on direct appeal, and (2) established that he suffered actual prejudice from the trial court's jury instructions. We reverse the judgment of the habeas court and remand the case to that court with direction to dismiss the petition.

The following facts and procedural history are relevant to this appeal. In 1997, the petitioner was convicted following a jury trial of one count of kidnapping in the first degree in violation of General Statutes § 53a-92 (a) (2) (A), one count of sexual assault in the first degree in violation of General Statutes § 53a-70 (a) (1), one count of attempt to commit sexual assault in the first degree in violation of General Statutes §§ 53a-49 (a) (2) and 53a-70 (a) (1), one count of assault in the third degree in violation of General Statutes § 53a-61 (a) (1), and one count of falsely reporting a motor vehicle theft in violation of General Statutes § 14-198. The trial court sentenced the petitioner to a total effective sentence of forty years incarceration, execution suspended after thirty-four years, followed by ten years of probation. The defendant appealed his conviction to this court and our Supreme Court transferred the appeal to itself pursuant to General Statutes § 51-199 (c) and Practice Book § 65-1.

In 2000, our Supreme Court affirmed the judgment of conviction, at which time it set forth the following facts underlying the crimes: "During the evening of September 16, 1996, the victim[1] walked the short distance from her home in East Haddam to J.R.'s Cafe [J.R.'s] in Moodus. The [petitioner], with whom the victim was not acquainted, already was at the bar when she arrived. The victim remained at J.R.'s for approximately one and one-half to two hours during which time she had several drinks, danced, and conversed with acquaintances. The victim also asked the [petitioner] to dance, tugging his arm to encourage him to join her on the dance floor. After dancing with the victim, the [petitioner] bought the victim a drink and they conversed for a few minutes thereafter.

"At approximately 12:30 a.m. on September 17, 1996, the victim left the bar and started walking home. The [petitioner] exited the bar immediately after the victim. As the victim walked down one of the driveways leading away from J.R.'s, the [petitioner] drove up next to her and offered to drive her home. The victim accepted his offer and voluntarily entered the [petitioner's] vehicle.

The victim gave the [petitioner] directions to her home, but he failed to turn onto her road as instructed. The victim attempted to exit the moving car by opening the door, but the [petitioner] grabbed her by the arm and pulled her back into the vehicle.

"The [petitioner] then drove the victim to a remote area of Cockaponset State Forest, where he pulled her out of the car onto the wet ground and pulled her shorts and underpants down around her ankles. The [petitioner] squeezed his hands around the victim's neck, choking her, and then performed oral sex on her. The [petitioner] also touched the victim's breasts, vagina and buttocks with his hands, mouth and penis. During this period the [petitioner] told the victim that she 'deserved it.' While the [petitioner] again attempted to perform oral sex on her, the victim managed to kick him away and flee through the woods, pulling up her shorts and underpants as she ran. As the victim ran away, she lost one of her shoes, a sock and her driver's license, which she had kept in her sock. The victim hid for a period of time beneath a tree.

"Eventually, the victim walked to a house adjacent to the woods where she knocked on the door and asked for help. The victim, who had mud on her clothes and body, and marks around her neck, appeared to have been involved in a struggle. Georgia Marica, one of the occupants of the house, testified that the victim appeared to be terrified. Inside the house, the victim telephoned her father and told him that she had just been raped. Marica notified the police, who arrived shortly thereafter.

"In response to the victim's report of a sexual assault, the police conducted a search of the area for any suspects or vehicles. During the early morning of September 17, 1996, the police located the [petitioner's] vehicle approximately 100 feet off a road leading into Cockaponset State Forest. The vehicle's windows were rolled down and the interior was wet due to the rain. A canine search of the vicinity around the vehicle uncovered the victim's shoe, sock and driver's license and the [petitioner's] set of keys.

"At approximately 6 a.m. on September 17, 1996, the [petitioner's] girlfriend, Toni Bartlotta, reported the [petitioner's] vehicle as stolen to the state police. Officers went to the [petitioner's] apartment in Deep River in response to the stolen vehicle report and, upon arriving at the apartment, observed Bartlotta cleaning broken glass panes from the front door. The [petitioner] provided the officers with oral and written statements alleging, inter alia, that he had parked his vehicle outside the Old Lyme Tavern in East Lyme the previous evening and later went home with a friend. The [petitioner] further claimed that, when he returned to the Old Lyme Tavern the next morning to retrieve his vehicle, it was missing.

"Later the same day, a detective for the state police went to the [petitioner's] home and requested that the [petitioner] go down to the state police barracks in order to identify his vehicle and further discuss the previous night's events. At the barracks, the [petitioner] told police that in his previous statement he had lied about his vehicle being stolen because he had been out with another woman the previous evening and did not want his girlfriend to find out.

"The [petitioner] then provided the police with a second version of the previous evening's events, claiming that he had met the victim at J.R.'s, engaged in conversation with her and offered her a ride home when he saw her walking outside the bar. The [petitioner] further stated that they drove to Cockaponset State Forest, parked the vehicle and began kissing and caressing. The [petitioner] then removed the victim's shirt and shorts and performed consensual oral sex on her in the front seat of the vehicle. The [petitioner] claimed that they then decided to have sexual intercourse and the victim laid down on the wet ground next to the car. The [petitioner] further told police that when he was unable to maintain an erection, the victim became angry and got dressed. The [petitioner] claimed that he had then realized that the victim had taken his car keys and, as the victim started to walk away from the car, he reached out, attempting to recover his keys from her. The [petitioner] alleged that as he reached out, he tripped over a rock and accidentally grabbed the victim's neck. The victim then ran away, and the [petitioner], unable to find his keys, walked home, breaking the glass in his front door in order to gain entry.

"The following day, the [petitioner] contacted the state police and again revised portions of his earlier statement. The [petitioner] provided a third version of the events, claiming that when he left J.R.'s he found the victim passed out in the front seat of his car. The [petitioner] woke up the victim and she agreed to go on a ride with him. The [petitioner] did not alter his previous statements concerning the rest of the evening's events. The [petitioner] was arrested later that day." (Footnotes altered.) *State* v. *Wilcox*, 254 Conn. 441, 444–48, 758 A.2d 824 (2000).

Following the petitioner's criminal trial and his direct appeal, our Supreme Court issued two watershed decisions pertaining to kidnapping crimes, *State* v. *Salamon*, 287 Conn. 509, 949 A.2d 1092 (2008), and *Luurtsema* v. *Commissioner of Correction*, 299 Conn. 740, 12 A.3d 817 (2011). Pursuant to the holdings of these decisions, a defendant who has been convicted of kidnapping may collaterally attack his kidnapping conviction on the ground that the trial court's jury instructions failed to require that the jury find that the defendant's confinement or movement of the victim was not merely incidental to the defendant's commission of

some other crime or crimes. See *State* v. *Salamon*, supra, 546–50; see also *Luurtsema* v. *Commissioner of Correction*, supra, 773 ("We turn . . . to the . . . question, whether this court's interpretation of [the kidnapping in the first degree statute] in *Salamon* should apply retroactively in the present case. Because the rationales underlying the general presumption in favor of full retroactivity apply here, we conclude that it should.").

On July 11, 2011, the petitioner filed a petition for a writ of habeas corpus, which he amended on February 4, 2014. In his amended petition, the petitioner challenged his kidnapping conviction on the ground that the instructions given to the jury during his criminal trial were not in accordance with *State* v. *Salamon*, supra, 287 Conn. 550.[2] On February 24, 2014, the respondent filed a return to the amended petition, alleging the special defense of procedural default. The petitioner filed a reply on February 26, 2014, in which he claimed that he could establish both good cause for his default and actual prejudice from the lack of a *Salamon* instruction at his criminal trial, which excused the default. With respect to cause for the procedural default, the petitioner specifically claimed that he had established cause because it would have been futile to raise a *Salamon* claim at trial or on direct appeal, given that at the times of those proceedings, our Supreme Court had yet to release its decision in *Salamon*. Further, the petitioner claimed that he suffered actual prejudice from the lack of a *Salamon* instruction at his criminal trial because he would not have been convicted of kidnapping had the jury received such an instruction. The petitioner's habeas trial was held by the court, *Oliver, J.*, on June 2, 2014.

On September 17, 2014, the habeas court issued its memorandum of decision, wherein it granted the petitioner's habeas petition. In the memorandum of decision, the habeas court concluded that the petitioner had demonstrated cause for his procedural default because "there was no reasonable basis for [the petitioner's] trial counsel to request a *Salamon* instruction at trial in light of the then prevailing interpretation of the kidnapping statute when the petitioner was convicted in 1997." The habeas court also concluded that the petitioner had demonstrated actual prejudice resulting from the absence of a *Salamon* instruction during his criminal trial. Relying on *Hinds* v. *Commissioner of Correction*, 151 Conn. App. 837, 859, 97 A.3d 986, cert. granted, 314 Conn. 928, 101 A.3d 273 (2014), the habeas court stated that the record revealed that "the state did not present evidence that the petitioner's restraint and abduction of the victim was sufficiently disconnected from his sexual assault of [her] so as to render the absence of a *Salamon* instruction harmless." (Internal quotation marks omitted.) The habeas court vacated the petitioner's kidnapping conviction and sentence,

and ordered the case to be returned to the trial court for a new trial that would include a *Salamon* instruction to the jury. After the habeas court issued its decision, the respondent filed a petition for certification to appeal to this court, which the habeas court granted on September 29, 2014. This appeal followed.

On appeal, the respondent raises two central claims in support of his argument for reversal of the habeas court's judgment granting the petitioner's habeas petition. In his first claim, the respondent argues that the habeas court committed reversible error by concluding that the petitioner had established sufficient cause for his failure to raise a *Salamon* claim at trial or on direct appeal.[3] In his second claim, the respondent argues that the habeas court committed reversible error by concluding that the petitioner had established actual prejudice on the basis of the trial court's failure to provide the jury with a *Salamon* instruction at his criminal trial. Specifically, the respondent claims that the habeas court erred in its actual prejudice determination because (1) its conclusion was based on clearly erroneous factual findings, (2) its analysis was the product of an incorrect harmless error standard, and (3) under any applicable standard, the petitioner could not prove actual prejudice. In opposition to the respondent's claims, the petitioner argues that (1) the habeas court did not err in its determination that the petitioner had established good cause for his failure to raise a *Salamon* claim at trial or on direct appeal,[4] and (2) the habeas court did not err in its determination that the petitioner had established actual prejudice from the absence of a *Salamon* instruction at trial.[5] We agree with the respondent that the habeas court erred in its determination that the petitioner suffered actual prejudice due to the absence of a *Salamon* instruction at his criminal trial, and we therefore reverse the habeas court's judgment solely on that ground.[6]

We begin our analysis by setting forth the appropriate standard of review on appeal. "Our review of a determination of the application of procedural default involves a question of law over which our review is plenary." *Epps* v. *Commissioner of Correction*, 153 Conn. App. 729, 736, 104 A.3d 760 (2014).

In determining whether a habeas petitioner's claims of constitutional error are excused from procedural default, Connecticut courts apply the "cause and prejudice" standard of reviewability articulated by the United States Supreme Court in *Wainwright* v. *Sykes*, 433 U.S. 72, 87, 97 S. Ct. 2497, 53 L. Ed. 594 (1977). See, e.g., *Crawford* v. *Commissioner of Correction*, 294 Conn. 165, 179–89, 982 A.2d 620 (2009); *Council* v. *Commissioner of Correction*, 286 Conn. 477, 489, 944 A.2d 340 (2008); *Johnson* v. *Commissioner of Correction*, 285 Conn. 556, 567–68, 941 A.2d 248 (2008); *Correia* v. *Rowland*, 263 Conn. 453, 462, 820 A.2d 1009 (2003); *Jackson*

v. *Commissioner of Correction*, 227 Conn. 124, 135–36, 629 A.2d 413 (1993); *Johnson* v. *Commissioner of Correction*, 218 Conn. 403, 408–409, 589 A.2d 1214 (1991). "The cause and prejudice standard is designed to prevent full review of issues in habeas corpus proceedings that counsel did not raise at trial or on appeal for reasons of tactics, [inadvertence] or ignorance . . . ." (Internal quotation marks omitted.) *Crawford* v. *Commissioner of Correction*, supra, 191. In order to satisfy this standard, "the [habeas] petitioner must demonstrate *both* good cause for failing to raise a claim at trial or on direct appeal *and* actual prejudice from the underlying impropriety." (Emphasis added.) Id., 181; see also *Coleman* v. *Thompson*, 501 U.S. 722, 750, 111 S. Ct. 2546, 115 L. Ed. 2d 640 (1991). "[T]he existence of cause for a procedural default must ordinarily turn on whether the [petitioner] can show that some objective factor external to the defense impeded counsel's efforts to comply with the [s]tate's procedural rule." (Internal quotation marks omitted.) *Johnson* v. *Commissioner of Correction*, supra, 568.

With respect to the actual prejudice prong, "[t]he habeas petitioner must show not merely that the errors at . . . trial created the *possibility* of prejudice, but that they worked to his *actual* and substantial disadvantage, infecting his entire trial with error of constitutional dimensions. . . . Such a showing of pervasive actual prejudice can hardly be thought to constitute anything other than a showing that the prisoner was denied fundamental fairness at trial." (Citation omitted; emphasis in original; internal quotation marks omitted.) *Murray* v. *Carrier*, 477 U.S. 478, 494, 106 S. Ct. 2639, 91 L. Ed. 2d 397 (1986). In *Valeriano* v. *Bronson*, 209 Conn. 75, 83–84, 546 A.2d 1380 (1988), our Supreme Court noted that a habeas petitioner's showing of ineffective assistance of counsel demonstrates such actual prejudice. The actual prejudice burden is more difficult for a habeas petitioner to meet, however, where his claims do not allege ineffective assistance of counsel. See M. Marcus, "Federal Habeas Corpus After State Court Default: A Definition of Cause and Prejudice," 53 Fordham L. Rev. 663, 731 n.418 (1985); cf. *Dennis* v. *Commissioner of Correction*, 134 Conn. App. 520, 536, 39 A.3d 799 (actual prejudice presumed when petitioner's right to counsel violated); *Bowers* v. *Commissioner of Correction*, 33 Conn. App. 449, 453 n.3, 636 A.2d 388 (petitioner proving ineffective assistance of counsel necessarily proves both cause and prejudice), cert. denied, 228 Conn. 929, 640 A.2d 115 (1994). "To mount a successful collateral attack on his conviction, a prisoner must demonstrate a miscarriage of justice or other prejudice and not merely an error which might entitle him to relief on appeal. . . . In order to demonstrate such a fundamental unfairness or miscarriage of justice, the petitioner should be required to show that he is burdened by an unreliable conviction." (Citations omitted;

internal quotation marks omitted.) *Summerville* v. *Warden*, 229 Conn. 397, 419, 641 A.2d 1356 (1994).

The alleged constitutional deprivation in the petitioner's habeas petition is based on the lack of a *Salamon* instruction. In *Salamon*, our Supreme Court held that "to commit a kidnapping in conjunction with another crime, a defendant *must intend to prevent the victim's liberation for a longer period of time or to a greater degree than that which is necessary to commit the other crime.*" (Emphasis added.) *State* v. *Salamon*, supra, 287 Conn. 542. This intent requirement has become a touchstone for all kidnapping instructions. The court further stated that "[f]or purposes of making [the] determination [of whether a criminal defendant's movement or confinement of a victim was necessary or incidental to the commission of another crime], *the jury should be instructed to consider the various relevant factors*, including [1] the nature and duration of the victim's movement or confinement by the defendant, [2] whether that movement or confinement occurred during the commission of the separate offense, [3] whether the restraint was inherent in the nature of the separate offense, [4] whether the restraint prevented the victim from summoning assistance, [5] whether the restraint reduced the defendant's risk of detection and [6] whether the restraint created a significant danger or increased the victim's risk of harm independent of that posed by the separate offense." (Emphasis added.) Id., 548. Viewing the claim before us in light of these principles, we now proceed to our analysis of whether the habeas court properly construed the petitioner's *Salamon* claim to be excused from procedural default.

In prior habeas appeals in which petitioners have challenged their kidnapping convictions[7] on *Salamon* grounds, the resolution of Connecticut's appellate courts regarding actual prejudice have been highly dependent on the facts and circumstances underlying each case, yet, consistent with the principles underlying our Supreme Court's analysis in *Salamon*, the decisions reveal that the absence of a *Salamon* instruction generally has been construed as more prejudicial in cases where a defendant's kidnapping related actions were closely aligned in time, place, and manner to his other criminal acts. Analyses of *Salamon* claims have focused on a variety of factors in determining whether a kidnapping conviction can stand, but the timing, location, and manner in which the defendant commits criminal acts against a victim are particularly crucial factors. Thus, in *Hinds* v. *Commissioner of Correction*, supra, 151 Conn. App. 854–58, this court concluded that a petitioner, having been convicted of kidnapping and sexual assault, had demonstrated good cause and actual prejudice excusing procedural default with respect to his *Salamon* claim. This court deemed as particularly significant the facts that the abduction and sexual assault had occurred within several steps of the petitioner's

truck and within a matter of several minutes. Id., 858–59. Similarly, in *Epps* v. *Commissioner of Correction*, supra, 153 Conn. App. 732–33, 741, this court once again took note of facts in the record showing that the petitioner—who was challenging a procedural default defense with respect to his *Salamon* claim—had punched the victim in his car, dragged her to the car's backseat, and began choking and suppressing her all within a matter of several minutes and within the car itself. Accordingly, with these facts in mind, some of which were disputed, this court concluded that the petitioner had established actual prejudice because "[i]n the absence of a *Salamon* instruction, we have no reasonable assurance that the kidnapping conviction was not based on restraint of the victim that was incidental to the assault . . . ." Id., 742. This court reached the opposite result in *Eric M.* v. *Commissioner of Correction*, 153 Conn. App. 837, 847, 108 A.3d 1128 (2014), cert. denied, 315 Conn. 915, 106 A.3d 308 (2015), where we affirmed the trial court's summary judgment in favor of the respondent and held that the lack of a *Salamon* instruction was harmless error beyond a reasonable doubt. Although this court did not conduct a procedural default analysis in that case, our analysis of the facts underlying the kidnapping is instructive in our analysis of actual prejudice because we noted that the petitioner had restrained the victim for over five hours and sexually assaulted her for only a few minutes during that period of time. Id., 846–47. Such overwhelming evidence, this court reasoned, would not persuade any reasonable jury to find that the petitioner's restraint of the victim was merely incidental to his commission of sexual assault. Id., 847.

Connecticut's appellate courts have also provided instructive analyses in direct appeals in which defendants have challenged their kidnapping convictions on *Salamon* grounds. These cases illustrate the multifaceted approach that Connecticut courts have taken in evaluating whether a criminal defendant's actions in restraining the victim were merely incidental to the commission of another crime or were so separate and distinct as to constitute a separate kidnapping offense. These cases further establish the importance of examining the timing, location, and manner of the defendant's actions against the victim. For example, in *State* v. *Hampton*, 293 Conn. 435, 455–64, 988 A.2d 167 (2009), our Supreme Court concluded that the lack of a *Salamon* instruction at trial was harmless error because evidence in the record showed that the defendant and a criminal associate had driven the victim in a car for over three hours across the Hartford area before they sexually and physically assaulted her in the car. Similarly, in *State* v. *Nelson*, 118 Conn. App. 831, 834–36, 856, 986 A.2d 311, cert. denied, 295 Conn. 911, 989 A.2d 1074 (2010), this court held that the absence of a *Salamon* instruction was harmless error where the defen-

dant and a criminal associate had forcibly entered the victim's home, assaulted and bound him, stolen valuables from his home, put him in the backseat of his own car, and then drove around the Hartford area to various locations before leaving him bound in his car nearly five hours later. These cases illustrate how Connecticut courts ultimately assess the importance of a *Salamon* instruction by scrutinizing how a reasonable jury would perceive the defendant's restraint of the victim, particularly with respect to when, where, and how the defendant confined or moved the victim. See *State* v. *Fields*, 302 Conn. 236, 250–53, 24 A.3d 1243 (2011) (holding that failure of trial court to provide *Salamon* instruction on one of two kidnapping counts against defendant was not harmless error where facts showed defendant had assaulted one of several victims as he entered his house, dragged him to bathroom in house and continued to assault him, and dragged him outside and placed him in parked car in driveway of house before victim was able to escape, all of which occurred within matter of minutes); *State* v. *Flores*, 301 Conn. 77, 86–89, 17 A.3d 1025 (2011) (same holding where defendant and several criminal associates had entered victim's home, held her at gunpoint, and threatened her while carrying out robbery of victim's home, all of which lasted several minutes); see also *State* v. *Ward*, 306 Conn. 718, 736–38, 51 A.3d 970 (2012) (reversing trial court's postguilty verdict judgment of acquittal on kidnapping charge and concluding that jury, which had received *Salamon* instruction, could have found that defendant's confinement and movement of victim was not merely incidental to his sexual assault of her where he held her at knifepoint in kitchen of victim's home, forced her to walk into bedroom, and sexually assaulted her there).

We conclude that the petitioner in the present case has failed to meet his heavy burden of demonstrating actual prejudice from the trial court's failure to provide a *Salamon* instruction at his criminal trial. The petitioner's kidnapping conviction constitutes neither a fundamental unfairness nor a miscarriage of justice. See *Murray* v. *Carrier*, supra, 477 U.S. 494; *Summerville* v. *Warden*, supra, 229 Conn. 419. Where the state has presented overwhelming evidence that a defendant convicted of kidnapping had restrained the victim for a substantial period of time; see *Eric M.* v. *Commissioner of Correction*, supra, 153 Conn. App. 846–47; had moved the victim a substantial distance against her will, and had harmed the victim in separate and distinct ways, this court and our Supreme Court have concluded that any absence of a *Salamon* instruction at the defendant's trial was a harmless impropriety. See *State* v. *Hampton*, supra, 293 Conn. 463–64; *State* v. *Nelson*, supra, 118 Conn. App. 860–62. On the basis of our review of the record and our cognizance of the dictates of *Salamon*, we conclude that when presented with the facts of

the underlying crime, as set forth by this court in the petitioner's direct appeal, a reasonable jury would not have found the petitioner's restraint of the victim to have been merely incidental to his sexual assault of her. Furthermore, we disagree with the habeas court's conclusion that the evidence in the record fails to show that the petitioner's restraint and abduction of the victim were sufficiently disconnected from his sexual assault of her to constitute a kidnapping. To the contrary, we conclude that a reasonable jury, when presented with the evidence in the record, would have been able to find beyond a reasonable doubt that the petitioner's restraint and abduction of the victim were sufficiently disconnected from his sexual assault of her to constitute a kidnapping. Contra *Hinds* v. *Commissioner of Correction*, supra, 151 Conn. App. 858–59 (concluding that petitioner had established actual prejudice because record revealed that state did not present evidence that petitioner's restraint and abduction of victim was "sufficiently disconnected from his sexual assault of . . . victim so as to render . . . absence of . . . *Salamon* instruction harmless").

Our review of the trial record reveals that the following facts were before the jury when it reached its verdict. On direct examination, the victim testified that J.R.'s was located in the Moodus village of East Haddam on September 17, 1996. The victim testified that she had been walking for "[m]aybe two minutes" after she left J.R.'s before she was offered a ride home by the petitioner in his car. The victim testified that her home on September 17, 1996, was located in Moodus and that it was a five minute walk from where the petitioner picked her up in his car. The victim testified that the petitioner drove past her home against her will, grabbing her as she tried to exit his car. Furthermore, the petitioner *admitted* in his habeas pleadings that he restrained the victim against her will while he drove her in his car. Specifically, in the factual claims section of his amended petition, he stated that "the victim attempted to leave the car, but the petitioner *refused to permit* [*her*] *to exit the car*." (Emphasis added.) During defense counsel's cross-examination of the victim, the victim testified that she had been in the petitioner's vehicle "for a significant period of time." The petitioner, in a sworn statement to the police that was admitted as a full exhibit at trial, stated that he drove the victim to Cockaponset State Forest near some lakes, which was "about a twenty minute ride" from J.R.'s. On direct examination, one of the Connecticut state troopers who arrived at the scene shortly after the assault had been reported testified that he located the petitioner's car about seven tenths of a mile down a gravel road leading from a paved road into Cockaponset State Forest. Finally, there is substantial evidence in the record indicating that the petitioner's sexual and physical assault of the victim occurred in Cockaponset

State Forest in close proximity to the petitioner's car. See *State* v. *Wilcox*, supra, 254 Conn. 445. Only after secreting the victim during the night in an area well into the state forest—where her chances of detection and escape were diminished, and the summoning of assistance would have been difficult for her—did the petitioner pull the victim out of his car, drag her approximately twenty feet into the woods off the access road, and physically and sexually assault her. The petitioner also attempted a second sexual assault of her, but the victim fled further into the woods.

We conclude that the evidence in the record establishes that the petitioner's restraint and abduction of the victim in his car were not merely incidental to his ultimate sexual assault of her in Cockaponset State Forest.[8] See *State* v. *Salamon*, supra, 287 Conn. 550. One can draw a reasonable inference that the petitioner's restraint of the victim, which commenced when he abducted her by refusing to turn onto her street in Moodus and continued until he drove her to Cockaponset State Forest in an adjacent town, was to avoid detection, and not necessary only to complete the act of sexual assault. One can also reasonably infer that the petitioner drove the victim from her street to Cockaponset State Forest with the intent to hinder her ability to call for assistance, given the remoteness of the location where he ultimately stopped his car. One also can reasonably infer, given that the petitioner attempted a second sexual assault of the victim, that he intended to confine her for a lengthy period of time in order to perpetrate more than a single sexual assault of her. There is overwhelming evidence in the record to support such inferences, all of which strongly suggest that the petitioner had in fact committed the separate and distinct kidnapping offense in addition to sexual and physical assault. Therefore, we deem the habeas court's actual prejudice determination to be reversible error on the basis of our conclusion that the absence of a *Salamon* instruction in the petitioner's criminal trial did not significantly impact its outcome. Because the petitioner failed to prove actual prejudice from the absence of a *Salamon* instruction at his criminal trial, he is not excused from his procedural default and his habeas petition must be dismissed.

The judgment is reversed and the case is remanded with direction to dismiss the petitioner's amended petition for a writ of habeas corpus.

In this opinion the other judges concurred.

[1] In accordance with our policy of protecting the privacy interests of the victims of sexual abuse, we decline to identify the victim or others through whom the victim's identity may be ascertained. See General Statutes § 54-86e

[2] For the remainder of this opinion, we shall refer to this claim as the petitioner's *Salamon* claim.

[3] Specifically, the respondent argues that the habeas court erred because (1) the petitioner presented no evidence that futility was the cause for his failure to raise the *Salamon* claim, and (2) it improperly concluded that the petitioner had demonstrated good cause for not raising his *Salamon* claim

at trial or on appeal because he had "no reasonable basis" to do so.

[4] The petitioner divides his argument concerning cause into three subparts, in which he argues the following: (1) this court should decline to review the respondent's claim that the petitioner failed to present evidence about the futility of raising a *Salamon* claim because it was never presented to the habeas court; (2) if this court decides to review the respondent's claim, the habeas court correctly concluded that the petitioner had good cause for failing to raise a *Salamon* claim because the petitioner adequately established such a claim's futility; and (3) the habeas court properly used the term "futility" to describe the determination that the petitioner's counsel had no reasonable basis for raising a *Salamon* claim.

[5] The petitioner divides this argument concerning actual prejudice into four subparts, in which he argues the following: (1) the habeas court correctly determined that he was entitled to a *Salamon* instruction; (2) the habeas court's conclusion regarding his satisfying his burden to establish prejudice was not based on clearly erroneous factual findings; (3) the habeas court properly applied a harmless error standard in determining prejudice; and (4) a jury reasonably could find that his restraint of the victim was incidental to the sexual assault, which means that the absence of a *Salamon* instruction in his criminal trial was not harmless error.

[6] It is unnecessary for us to address the issue of whether the petitioner established good cause for his failure to raise a *Salamon* claim at trial or on direct appeal because our resolution of the actual prejudice inquiry is dispositive of this appeal. See *Starns* v. *Cowan*, 210 F. Supp. 2d 1033, 1041 (C.D. Ill. 2002) ("[t]his court does not need to examine whether Petitioner had adequate cause for not raising the claim because he cannot meet the second requirement of actual prejudice"); *Giannotti* v. *Warden*, 26 Conn. App. 125, 129, 599 A.2d 26 (1991) ("The *Wainwright* [v. *Sykes*, 433 U.S. 72, 87, 97 S. Ct. 2497, 53 L. Ed. 2d 594 (1977)] standard requires that the petitioner show good cause for the failure to preserve a claim at trial and actual prejudice resulting from the alleged constitutional violation. . . . The petitioner must establish both elements to obtain relief. . . . Here, the record is clear that the petitioner failed to satisfy at least the second requirement of the *Wainwright* cause and prejudice standard. Thus, he is not entitled to review of his constitutional claim on the merits." [Citations omitted.]), cert. denied, 221 Conn. 905, 600 A.2d 1359 (1992).

[7] General Statutes § 53a-92 (a) provides in relevant part: "A person is guilty of kidnapping in the first degree when he abducts another person and . . . (2) he restrains the person abducted with intent to (A) inflict physical injury upon him or violate or abuse him sexually; or (B) accomplish or advance the commission of a felony; or (C) terrorize him or a third person; or (D) interfere with the performance of a government function."

[8] The respondent claims that the habeas court erroneously found that "the state did not present evidence that the petitioner's restraint and abduction of the victim was sufficiently disconnected from his sexual assault of the victim so as to render the absence of a *Salamon* instruction harmless." Specifically, the respondent asserts that the court's conclusion in this regard cannot stand because it relies on the habeas court's clearly erroneous factual findings, namely, that "there is no evidence in the record as to the distance between the location where the victim attempted to exit the vehicle and the location where she was sexually assaulted, how long the victim was in the petitioner's car after she attempted to exit the vehicle, or the totality of the time the petitioner held the victim against her will." The petitioner argues that the habeas court's conclusion was proper because the victim is "the only witness who could legitimately attest to the times and distances of the restraint" and her testimony does not provide any reliable evidence as to these facts. After reviewing the testimony and exhibits adduced at the petitioner's criminal trial, we agree with the respondent that the habeas court's conclusion cannot stand. Our review of the evidence before the habeas court establishes that there is evidence in the record pertaining to the distance between the location where the victim attempted to exit the vehicle and the location where she was sexually assaulted. We also conclude, contrary to the habeas court's conclusion, that there is evidence in the record concerning the length of time that the victim was in the petitioner's car after she attempted to exit it. Finally, we conclude that there is evidence in the record pertaining to the totality of the time that the petitioner held the victim against her will.