## STATE OF CONNECTICUT *v.* RICHARD HAYWARD
## (AC 29709)

Flynn, C. J., and Robinson and Alvord, Js.

Argued May 29—officially released August 18, 2009

*Michael L. Moscowitz*, special public defender, for the appellant (defendant).

*Ted Govola, Jr.*, certified legal intern, with whom were *Michele C. Lukban*, senior assistant state's attorney, and, on the brief, *Michael Dearington*, state's attorney, and *Donald S. MacCalmon*, deputy assistant state's attorney, for the appellee (state).

*Opinion*

FLYNN, C. J. The defendant, Richard Hayward, appeals from the judgment of conviction, rendered after a jury trial, of assault in the second degree in violation of General Statutes § 53a-60 (a) (2).[1] On appeal, the defendant argues that (1) the evidence was insufficient to sustain his conviction and (2) the prosecutor engaged in impropriety during closing argument. We affirm the judgment of the trial court.

The jury reasonably could have found the following facts. On March 20, 2007, in the early hours of the morning, the defendant and his girlfriend, the victim, Natasha Groomes, were together in the victim's apartment. The defendant and the victim had spent the previous day together, drinking alcohol from approximately noon forward. At some point in the early morning, when both parties were intoxicated, the defendant demanded money from the victim to purchase more alcohol. Upon the victim's refusal to provide money, the defendant and the victim began to fight. As a result of the fight, the victim suffered a black eye, a laceration on the

---

[1] General Statutes § 53a-60 (a) provides in relevant part: "A person is guilty of assault in the second degree when . . . (2) with intent to cause physical injury to another person, he causes such injury to such person . . . by means of a deadly weapon or a dangerous instrument other than by means of the discharge of a firearm . . . ."

bridge of her nose and a laceration on the tip of her nose. The victim testified that she did not know what type of instrument the defendant had used to cut her. On cross-examination, she testified that she told police that she "thought [the defendant] cut [her] with a knife . . . ." Later in the course of the same cross-examination she stated that she had "never said what kind of object" the defendant used and that she had "just said he cut my face."

Vinu Verghese, a physician, treated the victim in the Hospital of Saint Raphael emergency room in New Haven between 7 and 8 a.m. on March 20, 2007. The victim told Verghese that she had been assaulted by her boyfriend. Verghese testified as to the victim's injuries and the causes thereof as follows. The injury to the victim's eye, a bruise, was a "blunt injury." The victim was given a computerized axial tomography scan, also known as a CAT scan, of her head as a result of the injury to her eye to determine whether she had a skull fracture, which would present a risk of death. The cut above the victim's nose was a three centimeter laceration that could have been a tear resulting from a blunt injury or could have been caused by a sharp object. The victim's third injury, the laceration on the tip of her nose, was more than likely caused by a sharp object. This laceration was a "through and through injury," as it extended from the surface of the nose all the way through to the inside. Because the nose is soft, a tear, rather than a laceration, likely would result from a blunt injury to that area. The victim's lack of bruising in the area and her lack of a broken nose or broken teeth further supported the conclusion that the injury to the tip of her nose resulted from a sharp object, as opposed to a blunt injury. The two lacerations suffered by the victim each required six stitches to close and caused permanent scarring to develop.

Michael DeFonzo, a security guard at the hospital, encountered the victim upon her arrival at the emergency room. He took a statement from the victim in which she stated that she had been struck in the head by the defendant with a blunt object. DeFonzo also observed the defendant arrive at the emergency room after the victim had arrived. DeFonzo took a statement from the defendant and contacted the police department concerning the incident. Officer Joseph Murphy of the New Haven police department responded to the hospital. Murphy observed the injuries to the victim's face. The victim told Murphy that she and the defendant had been drinking and that when she refused the defendant's request for more money for alcohol, he punched her and cut her with some sort of object. The victim gave Murphy permission to search her apartment. Murphy and two other officers found the defendant at the victim's apartment. Approximately five hours after the incident, the officers apprehended the defendant in the apartment and performed a search but did not find any apparent weapon.

The defendant was arrested and charged, by way of a substitute long form information, with assault in the second degree in violation of § 53a-60 (a) (1) and assault in the second degree in violation of § 53a-60 (a) (2). The defendant's trial commenced December 12, 2007. At the close of the state's case-in-chief, the defendant moved for a judgment of acquittal, arguing, inter alia, that there was no evidence that a dangerous instrument was employed in the incident. The court denied the motion. The jury subsequently found the defendant not guilty of the § 53a-60 (a) (1) charge and guilty of the § 53a-60 (a) (2) charge. The court sentenced the defendant to a term of five years incarceration. This appeal followed. Additional facts will be provided where necessary.

## I

We first turn to the defendant's claim that the evidence was insufficient to convict him of assault in the second degree in violation of § 53a-60 (a) (2). He claims that, because the weapon used was not in evidence and the victim testified at trial that she did not know what caused her injuries, the jury could not have inferred from the circumstantial evidence that the weapon was a dangerous instrument as defined by General Statutes § 53a-3 (7).

"Review of any claim of insufficiency of the evidence introduced to prove a violation of a criminal statute must necessarily begin with the skeletal requirements of what necessary elements the charged statute requires to be proved. Such a review necessarily involves statutory construction. Statutory construction is a question of law and therefore our review is plenary. . . . *State* v. *Burns*, 236 Conn. 18, 22, 670 A.2d 851 (1996).

"Once analysis is complete as to what the particular statute requires to be proved, we then review the evidence in light of those statutory requirements. Our review standard is well settled. In accordance with well established principles, appellate analysis of a claim of insufficiency of the evidence requires us to undertake a twofold task. We first review the evidence presented at the trial, construing it in the light most favorable to sustaining the jury's verdict. We then determine whether, upon the facts thus established and the inferences reasonably drawn therefrom, the jury could reasonably have concluded that the cumulative effect of the evidence established guilt beyond a reasonable doubt . . . ." (Internal quotation marks omitted.) *State* v. *Pommer*, 110 Conn. App. 608, 613, 955 A.2d 637, cert. denied, 289 Conn. 951, 961 A.2d 418 (2008).

Section 53a-3 (7) defines a dangerous instrument as "any instrument, article or substance which, under the

circumstances in which it is used . . . is capable of causing death or serious physical injury . . . ." Our inquiry thus becomes whether there was enough evidence to permit the jury to infer that the defendant used an instrument that could have inflicted "serious physical injury" to the victim. A "serious physical injury" is one that "creates a substantial risk of death, or which causes serious disfigurement, serious impairment of health or serious loss or impairment of the function of any bodily organ . . . ." General Statutes § 53a-3 (4). A review of the evidence reveals that the victim was seriously disfigured. The victim has scarring resulting from the injuries inflicted to her face by the defendant. The skin is the body's largest organ, and the jury reasonably could have found that the lacerations and the resulting scarring on the victim's nose amounted to a serious disfigurement.

We next consider the principal issue, namely, whether this serious physical injury was caused by a dangerous instrument. Evidence before the jury showed that the victim suffered two substantial lacerations, one on the bridge of her nose and another on its tip. According to her treating physician, Verghese, the cut to the tip of the nose was most likely caused by a sharp object. He based this opinion on the fact that if it had been instead caused by blunt trauma, the likely accompaniment would have been more bruising and a broken nose or teeth. The nose cuts were deep enough to require six stitches each. The victim told police that she had been cut with an object, possibly a knife. Viewing the evidence in the light most favorable toward sustaining the verdict, as we are required to do in reviewing evidentiary insufficiency claims on appeal, we conclude that the jury reasonably could have inferred from the nature of the wound to the nose tip and the other evidence that the defendant used some instrumentality other than his fists in carrying out his

attack, that it was a dangerous instrument capable of causing serious disfigurement or serious physical injury and that it in fact caused such injury in the form of a scar on the tip of the victim's nose.

## II

The defendant next claims that the prosecutor committed prosecutorial impropriety in the course of closing argument, thereby denying the defendant of the right to a fair trial. Specifically, the defendant argues that one particular comment by the prosecutor improperly appealed to the emotions, passions and prejudices of the jury.

There was evidence before the jury from the victim's testimony that the defendant had been drinking intoxicating beverages. At one point, the victim referred to the defendant as being in a "blackout stage" as a result of his drinking. The state solicited other evidence to the effect that the defendant was conscious, able to converse with the victim and able to follow the victim to the hospital on his own. Defense counsel, in his closing argument to the jury, quoted a portion of the jury charge concerning the possibility that intoxication might negate intent, an element of the crime of assault in the second degree. He then highlighted the evidence of the defendant's intoxication. In his rebuttal argument, the prosecutor stated the following, which forms the basis of the defendant's claim on appeal: "Now, basically, if I may characterize [defense counsel's] argument, he's saying that this defendant was drunk, and that because he was drunk, we shouldn't hold him accountable for what he did. Well, if you do that and he walks out of here without being held accountable, is it then okay for him to get drunk again and slice somebody else up? You'd be telling him to keep the liquor bottle handy because that's going to negate the intent if he does this again to someone else; that's what

you'd be telling him. You know that's nonsense. We are all responsible for what we do."

The defendant failed to object to the portion of the prosecutor's statement he now challenges on appeal. His prosecutorial impropriety claim therefore is unpreserved. In determining whether the impropriety rose to a denial of due process, we must consider the factors enumerated in *State* v. *Williams*, 204 Conn. 523, 540, 529 A.2d 653 (1987).

In analyzing claims of prosecutorial impropriety, we first must determine whether in fact any impropriety occurred, and, if it did, we then must determine whether that impropriety deprived the defendant of his due process right to a fair trial. *State* v. *Bell*, 283 Conn. 748, 760, 931 A.2d 198 (2007). The question of whether the defendant has been prejudiced by prosecutorial impropriety depends on whether there is a reasonable likelihood that the jury's verdict would have been different absent the impropriety. Id.

In light of the evidence of the defendant's alcohol consumption, the question before the jury was whether the defendant could have formed the specific intent to cause physical injury to the victim. It was improper for the prosecutor to attempt to divert the jury from the focus of the judge's charge, which was to consider the evidence of intoxication insofar as it might negate an element of the crime, namely, intent. In urging the jury not to accept the defendant's argument concerning intoxication, the prosecutor conjured up the possibility that if it found the defendant lacked the intent to harm the victim, the defendant could again become intoxicated and cause similar harm to another person. The question before the jury was whether the defendant, who was on trial, had the requisite intent to violate the statute on assault in the second degree, § 53a-60 (a) (2), as to the victim, Groomes. It was not what harm

might befall others if intent to cause physical injury was not established beyond a reasonable doubt in this case. It was not proper to say that "[w]e are all responsible," which, in context, could only have meant criminal responsibility even if intent were not proved.

Having concluded that the prosecutor's remarks were improper, we next review them in the context of the whole trial using the aforementioned factors set out in *State* v. *Williams*, supra, 204 Conn. 540. As for the first factor, we find no evidence in the record to indicate that the improper remarks were invited by defense counsel. Defense counsel was entitled to call the jury's attention to the evidence of intoxication in light of what the judge ultimately charged about the legal effect of intoxication and its relationship to the formation of specific intent.

We next proceed to the second *Williams* factor, the severity of the misconduct, and the high bar set for this factor by the court in *State* v. *Thompson*, 266 Conn. 440, 479–80, 832 A.2d 626 (2003). "In *Thompson*, a murder prosecution, our Supreme Court reviewed and found improper the prosecutor's repeatedly calling the defendant a 'killer'; id., 472; calling the testimony of the defendant's two principal witnesses 'reprehensible,' saying that they were 'lying' and lacked both 'moral fortitude' and 'conscience,' lived in a 'twisted world,' were not 'stand-up enough guy[s]' and let misguided loyalty to a friend influence their testimony, and that by doing so, they had 'reserved a place in hell for themselves'; id., 461; and they were truthful in their earlier, recanted pretrial statements and that to believe their trial testimony, jurors had to believe that the state's witnesses had lied, and suggesting to the jury that the witnesses would be arrested in connection with the homicide. Id., 467–69. Our Supreme Court in *Thompson* also concluded that the prosecutor improperly importuned the jury to give the victim's family justice by convicting the defendant; id., 473–74; and, finally, that he improperly

urged the jury to use impeachment evidence against a third defense witness substantively. Id., 475–77. Nonetheless, our Supreme Court held that this misconduct 'was not, for the most part, severe.' Id., 479." *State* v. *Dews*, 87 Conn. App. 63, 77–78, 864 A.2d 59, cert. denied, 274 Conn. 901, 876 A.2d 13 (2005). In the present case, the prosecutor did not engage in repeated *Thompson* like patterns of Juvenalian invective. By the *Thompson* standard, which constrains our review, we conclude that the prosecutor's conduct was far less egregious than that in *Thompson* and that the defendant has not satisfied the severity prong. See id., 78.

In the context of the entire summation, the remarks were not frequent, as they encompassed a single short paragraph of the state's closing argument. There was no curative instruction from the court. However, the defendant did not object to the remarks or request any curative instruction. Furthermore, the court charged the jury that "[c]ertain things are not evidence and you may not consider them in deciding what the facts are. Those things which are not evidence include arguments and statements by lawyers. The lawyers are not witnesses. What they have said in their closing arguments and at other times is intended to help you interpret the evidence, but it is not evidence. If the facts as you remember them differ from the way the lawyers have stated them, your memory of them controls."

The remarks concerned intent, which was central to the state's case and had to be proved beyond a reasonable doubt. However, we next consider the strength of the state's case. Given the brutal nature of the separate injuries, which the jury reasonably could have concluded were inflicted by the defendant, the state's case was strong, and the evidence was no less probative because it was in large part circumstantial with respect to the defendant's use of a dangerous instrument.

Having considered the factors delineated in *Williams* and viewing the prosecutor's improper remarks in the context of the entire trial, we conclude that the defendant was not unfairly and unconstitutionally deprived of a fair trial.

The judgment is affirmed.

In this opinion the other judges concurred.