******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion. In no event will any such motions be accepted before the "officially released" date.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the electronic version of an opinion and the print version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest print version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears on the Commission on Official Legal Publications Electronic Bulletin Board Service and in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

STATE OF CONNECTICUT *v.* DIVENSON PETION
(AC 37884)

DiPentima, C. J., and Prescott and Beach, Js.

*Argued January 6—officially released May 2, 2017*

(Appeal from Superior Court, judicial district of
Stamford-Norwalk, White, J.)

*Jennifer B. Smith*, assigned counsel, for the appel-
lant (defendant).

*Jonathan M. Sousa*, special deputy assistant state's
attorney, with whom, on the brief, were *Richard J.
Colangelo*, *Jr.*, state's attorney, and *Maureen Ornousky*,
senior assistant state's attorney, for the appellee (state).

*Opinion*

PRESCOTT, J. The defendant, Divenson Petion, appeals from the judgment of conviction, rendered after a jury trial, of two counts of assault in the first degree in violation of General Statutes § 53a-59 (a) (1).[1] On appeal, the defendant claims that (1) there was insufficient evidence to support a conviction for first degree assault as to one of the two victims because the state failed to demonstrate beyond a reasonable doubt that that victim had suffered a "serious physical injury," and (2) prosecutorial improprieties during closing argument violated his right to a fair trial. We affirm the judgment of the trial court.

The jury reasonably could have found the following facts. In 2008, the defendant began dating Rosa Bran. Bran later became pregnant with the defendant's daughter, who was born in February, 2010. Bran also had a son from a prior relationship. After the birth of his daughter, the defendant's romantic relationship with Bran ended, although they remained in contact.

In 2012, Bran and the two children lived in an apartment in Norwalk that they shared with Bran's mother, her brother, and her brother's fiancée. The defendant occasionally would visit his daughter, sometimes showing up unannounced. Just prior to these assaults, Bran and the defendant had argued about his relationship with another woman and his failure to provide support for their daughter. Although the defendant had no interest in renewing his relationship with Bran, he told her that he did not want other men around his daughter. Bran recently had resumed a friendship with a former boyfriend, Robert Raphael. The defendant and Raphael met in the spring of 2012, at which time the defendant identified himself as the father of Bran's daughter.

On May 26, 2012, Raphael, who was celebrating his birthday, called Bran to see if she would like to spend the day with him. Bran agreed and invited Raphael to the apartment. Raphael came over to the apartment in the early afternoon. In addition to Bran and her two children, her cousin's two children were also at home at the time.

Later that afternoon, there was a knock on the door. Bran answered the door believing it would be her cousin picking up her two children, but it was the defendant. He asked to see his daughter. Bran explained that it was not a good time because she was asleep on the couch. The defendant then saw Raphael, who was planning to leave and coming toward the door. The defendant became angry, pushed Bran aside, and entered the apartment. He began to shout at Raphael to get out of the apartment. Raphael, who did not want to leave Bran and the children alone with the defendant while he was so agitated, told the defendant that he was staying. At that point, the defendant "got in his face" and began

pushing and punching him. Raphael retreated into the living room.

Meanwhile, the defendant's daughter, who was sleeping on the couch, woke up. Raphael told Bran to make sure the children were all right. The defendant became more and more aggressive, continuing to yell at Raphael, and, eventually, he pulled out a knife from his pocket and slashed Raphael across the face. Bran jumped in between the defendant and Raphael, apparently hoping this would prevent the defendant from cutting Raphael. The defendant cut Bran on her left arm in the process.

Bran was not immediately aware that she had been cut, and she grabbed her daughter to get her away from the situation. Raphael, who was bleeding heavily, ran out of the apartment, got in his car, and drove himself to the hospital. Bran's son came downstairs and, observing his mother's bleeding arm, grabbed a towel to cover her wound. The defendant apologized several times to Bran and left the apartment. Bran's cousin arrived shortly thereafter to retrieve her two children and drove Bran to the hospital.

Bran and Raphael both were admitted to Norwalk Hospital at around 4:30 p.m. At the time she was admitted, Bran had "grossly abnormal" vital signs for someone her age. She had a three and one-half centimeter abrasion and two lacerations on her left arm that were consistent with being cut by a sharp object. The smaller of the two lacerations was less than a centimeter long and required one suture. The other laceration was four centimeters in length and required ten sutures to close. The injury left a permanent and visible scar on her left arm.[2] While at the hospital, Bran and Raphael gave statements to the police, and the defendant was arrested shortly thereafter.

On October 15, 2014, the state charged the defendant in a long form information with two counts of assault in the first degree in violation of § 53a-59 (a) (1). The first count alleged that, with the intent to cause serious physical injury to Raphael, the defendant caused such injury to Raphael by means of a dangerous instrument. The second count alleged that, with the intent to cause serious physical injury to Raphael, the defendant caused such injury to Bran by means of a dangerous instrument. The jury found the defendant guilty on both counts of assault. The court sentenced the defendant on the assault convictions to two concurrent terms of seventeen years of incarceration, followed by three years of special parole.[3] This appeal followed.

I

The defendant first claims that, with respect to Bran, there was insufficient evidence to sustain a conviction of assault in the first degree in violation of § 53a-59 (a) (1) because the state failed to prove beyond a reason-

able doubt that she suffered a "serious physical injury." The defendant argues that Bran's injuries were limited to "an abrasion and two small lacerations on her left forearm." The defendant describes Bran's injuries as "unremarkably negligible," arguing that they were so minor that Bran was not immediately aware of the injuries and that she did not call 911 for help. The state, on the other hand, argues that the evidence presented to the jury showed that one of the two lacerations that Bran received resulted in a significant and readily visible scar and that, under our law, a jury reasonably could have found that such scarring constituted a serious disfigurement and, therefore, a serious physical injury. We agree with the state.

We begin with our well-settled standard of review and relevant legal principles. "The appellate standard of review [for] sufficiency of the evidence claims is well established. In reviewing a sufficiency [of the evidence] claim, we apply a two part test. First, we construe the evidence in the light most favorable to sustaining the verdict. Second, we determine whether upon the facts so construed and the inferences reasonably drawn therefrom the jury reasonably could have concluded that the cumulative force of the evidence established guilt beyond a reasonable doubt. . . .

"The evidence must be construed in a light most favorable to sustaining the [court's] verdict. . . . Our review is a fact based inquiry limited to determining whether the inferences drawn by the [fact finder] are so unreasonable as to be unjustifiable. . . . [T]he inquiry into whether the record evidence would support a finding of guilt beyond a reasonable doubt does not require a court to ask itself whether it believes that the evidence . . . established guilt beyond a reasonable doubt. . . . Instead, the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." (Internal quotation marks omitted.) *State* v. *Whitnum-Baker*, 169 Conn. App. 523, 525–26, 150 A.3d 1174 (2016), cert. denied, 324 Conn. 923, A.3d (2017).

Section 53a-59 (a) provides in relevant part: "A person is guilty of assault in the first degree when: (1) With intent to cause serious physical injury to another person, he causes such injury to such person or to a third person by means of a deadly weapon or a dangerous instrument . . . ." A "serious physical injury" is defined by statute as a "physical injury which creates a substantial risk of death, *or which causes serious disfigurement*, serious impairment of health or serious loss or impairment of the function of any bodily organ." (Emphasis added.) General Statutes § 53a-3 (4) (defining terms used throughout our penal code).

"Whether a victim has suffered serious physical injury

is a question of fact for the jury. . . . Although our case law . . . does not require expert medical testimony to establish the element of serious physical injury, there must be sufficient direct or circumstantial evidence or a combination of both presented to the jury from which it may find such injury." (Citation omitted.) *State* v. *Rumore*, 28 Conn. App. 402, 414, 613 A.2d 1328, cert. denied, 224 Conn. 906, 615 A.2d 1049 (1992); accord *State* v. *Lewis*, 146 Conn. App. 589, 608, 79 A.3d 102 (2013), cert. denied, 311 Conn. 904, 83 A.3d 605 (2014).

This court, in considering whether the state presented sufficient evidence to support a jury finding of "serious disfigurement," has relied on the following definitions. "To 'disfigure' is to 'blemish or spoil the appearance or shape of'; American Heritage Dictionary (New College Ed. 1976); and 'disfigurement' is '[t]hat which impairs or injures the beauty, symmetry, or appearance of a person or . . . which renders unsightly, misshapen, or imperfect, or deforms in some manner.' Ballentine's Law Dictionary (3d Ed. 1969)." *State* v. *Barretta*, 82 Conn. App. 684, 689, 846 A.2d 946, cert. denied, 270 Conn. 905, 853 A.2d 522 (2004).

In *State* v. *Nelson*, 118 Conn. App. 831, 848, 986 A.2d 311, cert. denied, 295 Conn. 911, 989 A.2d 1074 (2010), the defendant "pressed a knife and a knife sharpening tool, both of which had been heated on the victim's stove, against the skin on the victim's face and abdomen, thereby causing physical injuries." At the time of trial, nearly two years later, "the victim showed the jury a large patch of discolored skin on the upper right portion of his forehead, smaller areas of discolored skin on the right side of his forehead and discolored skin in his abdomen area." (Internal quotation marks omitted.) Id., 849. This court noted that "[s]carring of a similar nature has been deemed sufficient to satisfy the state's burden of proving that a victim has sustained a serious physical injury. See *State* v. *Hayward*, 116 Conn. App. 511, 517, 976 A.2d 791 (holding that evidence of scarring on victim's nose sufficient to demonstrate serious physical disfigurement), cert. denied, 293 Conn. 934, 981 A.2d 1077 (2009); *State* v. *Anderson*, [16 Conn. App. 346, 357, 547 A.2d 1368, cert. denied, 209 Conn. 828, 552 A.2d 433 (1988)] (holding that evidence of permanent scarring on victim's chest and abdomen sufficient to demonstrate serious physical disfigurement)." *State* v. *Nelson*, supra, 850. The court in *Nelson* concluded that the jury "reasonably could have concluded that [the victim's scars] constituted serious physical disfigurement because the scars *negatively affected the appearance of the skin* on his face and abdomen." (Emphasis added.) Id.

In *Hayward*, one of the cases cited by the court in *Nelson*, the victim had received two lacerations to the nose—one on the bridge and one on the tip—from a weapon wielded by the defendant, and each laceration required six stitches to close. *State* v. *Hayward*, supra,

116 Conn. App. 516. The court concluded that, on the basis of that evidence, "the jury reasonably could have found that the lacerations *and the resulting scarring* on the victim's nose amounted to a serious disfigurement." (Emphasis added.) Id.; see also *State* v. *Nival*, 42 Conn. App. 307, 309, 678 A.2d 1008 (1996) (holding jury reasonably could find serious physical injury on the basis of injury causing one-half inch permanent facial scar).

Turning to the present case, the state's theory of the case was that the permanent scar that resulted from Bran's injuries constituted a "serious disfigurement" and, therefore, a serious physical injury. The state presented the following evidence in support of that theory. First, Bran herself testified about the injuries that she sustained to her arm. She identified photographs of her injuries that were taken by the police on the day of the assault, which were admitted as full exhibits. She also testified that, after her injuries healed, she was left with a visible scar on her arm. Photographs of the scar were taken at the time of trial—one a close up and the other from an arms-length distance—and later admitted as full exhibits. Those photographs clearly depict the scar on the upper part of Bran's forearm, and the fact that, unless covered up, it is readily observable by anyone who came in contact with Bran.

The state also called as a witness, Joseph Wilkerson, the emergency room physician who treated Bran. He explained that Bran's injuries consisted of abrasions and two lacerations on her left arm, which were consistent with being cut by a sharp object. He described one laceration as only three quarters of a centimeter, but the other as four centimeters long. After cleaning the wounds, Wilkerson testified that he sutured the wounds. The smaller laceration needed only one suture, but the larger cut required ten. Wilkerson identified photographs of the wounds from the day that he treated them. He also was shown the picture depicting the scar on Bran's forearm nearly two and one-half years after the injury occurred. Wilkerson testified that the scar was consistent with the injury received by Bran and that it was permanent.

Accordingly, construed in a light most favorable to upholding the verdict, the jury was presented with both testimonial and photographic evidence that Bran sustained physical injuries as a result of the defendant's assault on Raphael, that one of the injuries required ten stitches to close, and that the result of that injury was one and one-half inch, permanent scar on her forearm. The defendant argues that because the scar was not on her face, the jury could not reasonably view it as a serious disfigurement. Our case law, however, does not contain any such limitation or requirement. To the contrary, we have held that scarring on far less observable parts of the body can support a finding of serious disfigurement. In *Anderson,* for example, the victim had

scarring on his chest and abdomen from which evidence the court held a jury reasonably could find a serious disfigurement. *State* v. *Anderson*, supra, 16 Conn. App. 357. Bran's scar was permanent, easily seen two and one-half years after the injury, and was located on the lower part of her arm, which, depending on the clothing she wore, was no less observable than a facial scar. The scar certainly "negatively affected the appearance of the skin" on her forearm; *State* v. *Nelson*, supra, 118 Conn. App. 850; and we cannot conclude as a matter of law that Bran's one and one-half inch scar from an injury requiring ten stitches to close was any less of a blemish or impairment to her appearance than the relatively smaller facial scars described in other cases that held that evidence of such scarring was sufficient to support a jury finding of serious disfigurement. See *State* v. *Hayward*, supra, 116 Conn. App. 516 (scar on tip of nose from injury closed by six stitches); *State* v. *Nival*, supra, 42 Conn. App. 308–309 (one-half inch permanent scar on lip). Ultimately, whether Bran's scar was a serious disfigurement was a determination properly made by the jury on the basis of life experiences and common sense. We will not second-guess that decision in this case.

In sum, the jury reasonably could have concluded from the cumulative effect of the evidence presented at trial that the state had proved beyond a reasonable doubt that Bran suffered a physical injury that resulted in serious disfigurement and, thus, suffered a serious physical injury sufficient to sustain the defendant's conviction of assault in the first degree. The defendant's insufficiency of the evidence claim, accordingly, fails.

## II

The defendant next claims that he was deprived of a fair trial due to prosecutorial improprieties during closing argument. In particular, he argues that the prosecutor improperly (1) expressed her personal opinion about the defendant's guilt, (2) appealed to the emotions, passions, and prejudices of the jury, and (3) expressed her opinion regarding the credibility of the sole witness offered by the defense.[4] The state argues that, viewed in context, the challenged arguments were not improper, and, alternatively, that any impropriety did not amount to a due process violation. We agree with the state that the prosecutor's remarks were not improper, and, on that basis, we reject the claim of the defendant.

"In analyzing claims of prosecutorial impropriety, we engage in a two step analytical process. . . . The two steps are separate and distinct. . . . We first examine whether prosecutorial impropriety occurred. . . . Second, if an impropriety exists, we then examine whether it deprived the defendant of his due process right to a fair trial. . . . In other words, an impropriety is an impropriety, regardless of its ultimate effect on the fair-

ness of the trial. Whether that impropriety was harmful and thus caused or contributed to a due process violation involves a separate and distinct inquiry. . . . [If] a defendant raises on appeal a claim that improper remarks by the prosecutor deprived the defendant of his constitutional right to a fair trial, the burden is on the defendant to show . . . that the remarks were improper." (Internal quotation marks omitted.) *State* v. *Griswold*, 160 Conn. App. 528, 558–59, 127 A.3d 189, cert. denied, 320 Conn. 907, 128 A.3d 952 (2015).

If, as in the present case, the claimed prosecutorial improprieties occurred during closing arguments, the following additional legal principles are applicable to our review. "[P]rosecutorial [impropriety] of a constitutional magnitude can occur in the course of closing arguments. . . . In determining whether such [an impropriety] has occurred, the reviewing court must give due deference to the fact that [c]ounsel must be allowed a generous latitude in argument, as the limits of legitimate argument and fair comment cannot be determined precisely by rule and line, and something must be allowed for the zeal of counsel in the heat of argument. . . . Thus, as the state's advocate, a prosecutor may argue the state's case forcefully, [provided the argument is] fair and based upon the facts in evidence and the reasonable inferences to be drawn therefrom. . . .

"Nevertheless, the prosecutor has a heightened duty to avoid argument that strays from the evidence or diverts the jury's attention from the facts of the case. . . . If the accused [is] guilty, he should [nonetheless] be convicted only after a fair trial, conducted strictly according to the sound and well-established rules which the laws prescribe. [Although] the privilege of counsel in addressing the jury should not be too closely narrowed or unduly hampered, it must never be used as a license to state, or to comment [on], or to suggest an inference from, facts not in evidence, or to present matters which the jury ha[s] no right to consider." (Internal quotation marks omitted.) Id., 559–60.

"Closing arguments of counsel, however, are seldom carefully constructed in toto before the event; improvisation frequently results in syntax left imperfect and meaning less than crystal clear. While these general observations in no way justify prosecutorial misconduct, they do suggest that a court should not lightly infer that a prosecutor intends an ambiguous remark to have its most damaging meaning or that a jury, sitting through lengthy exhortation, will draw that meaning from the plethora of less damaging interpretations." (Internal quotation marks omitted.) *State* v. *Williams*, 81 Conn. App. 1, 16–17, 838 A.2d 214, cert. denied, 268 Conn. 904, 845 A.2d 409 (2004). With these principles in mind, we address each of the alleged improprieties in turn.

## A

The defendant first argues that, in the prosecutor's initial closing argument, she improperly expressed her opinion as to the defendant's guilt. The defendant, who disputed the victims' identification of him as the perpetrator by presenting an alibi witness, contends that the entire purpose of the trial was for the jury to determine whether he was the assailant, and the prosecutor's challenged remark induced the jury to trust the judgment of the prosecutor about his guilt rather than its own evaluation of the evidence. The state counters that the prosecutor was not attempting to mislead the jury and that her challenged statement should be construed as commentary on the weakness of the defendant's alibi evidence, not the defendant's guilt. We agree with the state.

The following additional facts are relevant to this claim. At trial, the defendant presented an alibi witness, a hairstylist who worked at a Stamford salon. The alibi witness testified that the defendant was at her salon having his hair dyed and styled from approximately 12:20 p.m. until 5:50 p.m. on the day of the assaults, and that she never lost sight of the defendant during that timeframe. On cross-examination, however, she acknowledged that she had a close relationship with the defendant's family and that her recently deceased brother had been a close friend of the defendant. She did not have any written record of the defendant's appointment at the salon, and, although she had been aware of the defendant's arrest, she never informed the police about the defendant's whereabouts on the day of the assaults.

At the very end of her initial closing argument, after having marshaled the evidence regarding each element that the state needed to prove in order to obtain a verdict of guilty, including a thorough discussion of the defendant's alibi evidence, the prosecutor made the following statement: "The evidence shows that with all the elements in this case—has been proven. The defendant is the person who did it. There's really no dispute about that. He intended to cause serious physical injury to [Raphael]. Could there be any question as to whether he intended to cause the serious physical injury in this case, that he in fact caused those serious physical injuries to both [Raphael] and [Bran]? And you'll listen to the judge's instruction on that. And that he [caused] it with a dangerous instrument. And the judge is going to give you a definition of that and listen to it in the instruction. But the evidence is there to support." The defendant focuses our attention to that part of the statement suggesting "[t]here's really no dispute" that "[t]he defendant is the person who did it."

A prosecutor should not "express his opinion, directly or indirectly, as to the guilt of the defendant.

. . . Such expressions of personal opinion are a form of unsworn and unchecked testimony, and are particularly difficult for the jury to ignore because of the prosecutor's special position." (Internal quotation marks omitted.) *State* v. *Gibson*, 302 Conn. 653, 660, 31 A.3d 346 (2011). A prosecutor has a duty to refrain from stigmatizing a defendant, and although the prosecutor "has a right to argue that the evidence proves the defendant guilty as charged in the indictment," he or she cannot characterize the defendant as guilty. (Internal quotation marks omitted.) See *State* v. *Thompson*, 266 Conn. 440, 472–73, 832 A.2d 626 (2003).

Here, the prosecutor's comments, when considered in the context of the prosecutor's remarks as a whole, do not amount to an improper opinion regarding the defendant's guilt, but an argument asking the jury to reject the defendant's alibi defense. As the defendant acknowledges, his primary defense to the charges was that someone else must have assaulted Bran and Raphael. He claimed to have an alibi and, therefore, could not have been the "person who did it." The prosecutor addressed that defense in detail early in her closing argument as well as marshaling the evidence that the jury should consider in deciding whether the defendant was the perpetrator. The prosecutor highlighted that both victims knew the defendant prior to the incident and positively identified him as their assailant. She argued that, in light of the circumstances and the evidence, "there's no doubt it was the defendant that came in and did this."

Accordingly, in wrapping up her argument, the prosecutor again returned to this theme, arguing: "The defendant is the person who did it. There's really no dispute about that." Given the generous latitude that a prosecutor is entitled to in crafting and delivering closing arguments, we are convinced that the statement at issue was intended as a reminder to the jury of the weakness of the defendant's alibi defense, not as an improper opinion as to the defendant's guilt or innocence. In other words, we conclude that this particular statement was not improper.

B

The defendant next argues that, in describing the extent of Bran's injuries, the prosecutor made an improper comment that appealed to the passions and emotions of the jurors by asking them to identify with her. The state responds that the prosecutor's discussion of Bran's injuries constituted proper argument demonstrating that the state had met its burden of proving that Bran sustained a serious physical injury. We agree with the state.

"A prosecutor may not appeal to the emotions, passions and prejudices of the jurors. . . . When the prosecutor appeals to emotions, he invites the jury to decide

the case, not according to a rational appraisal of the evidence, but on the basis of powerful and irrelevant factors which are likely to skew that appraisal." (Internal quotation marks omitted.) *State* v. *Warholic*, 278 Conn. 354, 376, 897 A.2d 569 (2006). For example, it is improper for the prosecutor to "plea for sympathy for the victim" or "to encourage the jury to identify with the victim." (Citations omitted; internal quotation marks omitted.) See *State* v. *Long*, 293 Conn. 31, 59, 975 A.2d 660 (2009). "It must be acknowledged[,] [however,] that the line between comments that risk invoking the passions and prejudices of the jurors and those that are permissible rhetorical flourishes is not always easy to draw. The more closely the comments are connected to relevant facts disclosed by the evidence . . . the more likely they will be deemed permissible." *State* v. *Albino*, 312 Conn. 763, 773–74, 97 A.3d 478 (2014) (holding that prosecutor's comments that victim was "peppered with bullets" and that "the first bullet tore into his body" were not improper appeals to jury's emotions because they were "factually accurate descriptions of the evidence that were not unduly provocative").

In the present case, the prosecutor made the following argument regarding the state's burden of showing that Bran sustained a serious physical injury. "Another part we have to prove is that the defendant caused, in fact, serious physical injury. . . . Now, [Bran] was— [Bran] received a slash and puncture to her arm where she received numerous stitches to close it. And she has permanent scarring on her forearm. When you listen to the definition of serious physical injury the judge is going, one of the types of serious physical injury is serious disfigurement. *And it's up to you as the jury to decide, if a woman has a permanent scar such as hers on her forearm in an area that is seen—can be easily seen in most clothes that you wear—anytime she wears anything that doesn't go past her elbow, she's going to have this scar on her arm—it's up to you as jurors to decide whether or not that is permanent disfigurement and if that would qualify as serious physical injury.* And I think if you listen to the judge's instructions and you look at the photographs and you talk about what it would be like to walk around on the—with a scar in an area on your body that's frequently seen, then you would agree that the evidence shows that she was—it was a serious physical injury." (Emphasis added.)

The defendant argues that the emphasized portion of the prosecutor's arguments appealed to the emotions of the predominantly female jury—four of the six jurors were female—and tried to evoke sympathy for the victim as a woman, asking the jurors to consider "the hardship that she might experience when wearing particular clothing." The prosecutor's arguments, however, were not unduly provocative and did not stray from facts in evidence.

The state had the burden of proving that Bran sustained a serious physical injury, and, as discussed in section I of this opinion, it sought to prove this by showing that Bran was seriously disfigured. The state submitted photographs into evidence that showed Bran had a large scar as a result of her injuries and that the scar was on a part of her arm that often would be visible. Accordingly, the prosecutor's statement that the scar would be visible "anytime she wears anything that doesn't go past her elbow" was factual and also relevant to the jury's consideration of whether the scar qualified as a serious disfigurement.

We similarly are not persuaded that the prosecutor's reference to Bran as a woman—something that is both fact-based and easily observable by the jury—was an attempt to evoke the sympathy of female jurors. We recognize that a similar scar on a man arguably might be no less disfiguring in the eyes of the law. The prosecutor, however, except for this one brief reference to Bran's gender, did not attempt to argue at length that this type of injury is more significant to women in general or that the female jurors should sympathize with Bran or consider what this type of injury might mean to them. We simply cannot infer on the basis of this sole reference to her gender that the remark was intended to or, in fact, would have the effect of, unduly arousing the sympathy of the female jurors. We conclude that the defendant's claim that the prosecutor's remarks improperly sought to enflame the jury's emotions or evoke sympathy for the victim lacks merit.

C

Finally, the defendant argues that, during rebuttal closing argument, the prosecutor improperly expressed her personal opinion about the credibility of the defendant's alibi witness. In support of that argument, the defendant points to the following statement: "But listen to what [the judge] has to say because, you know—was [the alibi witness] biased? Yes. I mean the evidence is that she was biased in favor of the defendant. I mean that's—that's obvious." The state contends that the challenged argument was proper because, rather than expressing an opinion about the witness' credibility, the prosecutor merely suggested to the jury that it could reject the alibi witness' testimony as false given the significant evidence that the witness was biased and, accordingly, motivated to lie. Again, we agree with the state.

"[I]t is well established that a prosecutor may argue about the credibility of witnesses, as long as her assertions are based on evidence presented at trial and reasonable inferences that jurors might draw therefrom. . . . Moreover, [i]n deciding cases . . . [j]urors are not expected to lay aside matters of common knowledge or their own observations and experiences, but

rather, to apply them to the facts as presented to arrive at an intelligent and correct conclusion. . . . Therefore, it is entirely proper for counsel to appeal to [the jurors'] common sense in closing remarks. . . . Our jurisprudence permits these statements from the prosecution, if properly presented." (Internal quotation marks omitted.) *State* v. *O'Brien-Veader*, 318 Conn. 514, 547, 122 A.3d 555 (2015).

In the present case, we view the prosecutor's statement not as her own opinion about the credibility of the defendant's alibi witness, but as an argument focusing the jury's attention on the evidence and the inference it could draw therefrom in assessing whether to believe the defendant's alibi witness. The state had presented evidence from which the jury reasonably could have found that the alibi witness was biased in favor of the defendant and should not be believed. For example, in its cross-examination of the alibi witness, the state established that the witness knew the defendant and had a close relationship with his family. The witness' brother, who passed away shortly following the defendant's arrest in this matter, was a very close friend of the defendant. Furthermore, the evidence showed that the witness did not have written records to back up the defendant's alibi, and was unable to explain why she had not alerted the police about the alibi after she learned of the defendant's arrest.

Although the prosecutor answered "yes" to her own question about whether the alibi witness was biased, she immediately followed that answer by indicating that it was the evidence that made the alibi witness' bias "obvious." Given that we must allow some leeway to the prosecutor in crafting her argument, we conclude that the prosecutor's remarks regarding the credibility of the defendant's alibi witness were made on the basis of evidence before the jury and were not simply the prosecutor's opinion. Her statement, therefore, was not improper.

Having rejected the defendant's claim of prosecutorial impropriety on the basis that none of the prosecutor's challenged statements were improper, it is unnecessary to consider whether those statements deprived the defendant of a fair trial.

The judgment is affirmed.

In this opinion the other judges concurred.

[1] The defendant, who was on probation at the time of the assaults, also was charged in a separate information with two counts of violating his probation in violation of General Statutes § 53a-32. The assault and violation of probation charges were consolidated for purposes of trial, and the court heard evidence on the violation of probation charges outside the presence of the jury. The court subsequently rendered a judgment finding that he had violated his probation. The defendant has not raised any claims on appeal with respect to that judgment.

[2] Raphael's injuries were life threatening. His laceration began at the top of his left ear and went down and across the left side of his face. The wound was very deep, severed a facial nerve, and cut a branch of the jugular vein, which caused substantial blood loss. His injuries required immediate surgery

and resulted in both permanent scarring and nerve damage to his face.

[3] The court also sentenced the defendant to a concurrent term of eighteen months for violating his probation. See footnote 1 of this opinion.

[4] We note that the defendant never raised any objection to the prosecutor's remarks at the time of trial. Nevertheless, our Supreme Court has indicated that a defendant's failure to object to alleged prosecutorial improprieties at trial, although certainly a significant factor in our consideration of whether the defendant was deprived of a fair trial, does not render the defendant's claim unreviewable or require that his claim be reviewed as unpreserved under the rubric set forth in *State* v. *Golding*, 213 Conn. 233, 567 A.2d 823 (1989). See *State* v. *Stevenson*, 269 Conn. 563, 572–76, 849 A.2d 626 (2004).